**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| UPG ENTERPRISES LLC, *et al.*, | Case No. 26-15734 (DRF) |
| Debtors.[1] | Jointly Administered |

**ORDER TO REDACT**

Pursuant to section II.A.4.b. of the Administrative Procedures for the Case Management/Electronic Case Filing System, the motion to redact personal information is granted.

The clerk is directed to substitute the redacted document attached to the motion in place of the unredacted documents originally filed under docket number 49.

______________________________

United States Bankruptcy Judge

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN are as follows: UPG Enterprises, LLC (4790); UP Investment Holdings LLC (8445); UPI LS LLC (6446); UPI MakUSA LLC (1401); UPG Metal Services LLC (8496); GenX Leasing Partners LLC (4464); UP Central Office LLC (0397); UP Equipment Holdings LLC (0431); Metalex LLC (6707); UPG Fabrication LLC (9021); National Metalwares Holdings LLC (2789); National Metalwares L.P. (9247); Sidecar NM LLC (4555); Chicago Steel Holdings LLC (0967); Douglass Logistics LLC (6025); Lexington Steel LLC (2209); Maksteel USA LLC (6796); Maksteel Transport LLC (9011); and UPG Flat Roll Group LLC (7515). The Debtors' mailing address is 1400 16th St., #250, Oak Brook, IL 60523.

# <u>Exhibit B</u>

## Revised Sale Motion and Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>UPG ENTERPRISES LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-15734 (DRF)<br><br>Jointly Administered<br><br>**Hearing Date: October 14, 2026, at 11:00 a.m. (CT)**<br><br>**Objection Deadline: October 7, 2026, at 4:00 p.m. (CT)** |

**DEBTORS' MOTION FOR ENTRY OF ORDERS (A) (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES FOR THE SALE OF ANY AND ALL OR SUBSTANTIALLY ALL THE DEBTORS' ASSETS, (II) SCHEDULING AN AUCTION AND A SALE HEARING, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES, AND (V) GRANTING RELATED RELIEF; (B) (I) APPROVING THE SALE OF ANY AND ALL OR SUBSTANTIALLY ALL THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors"), respectfully move (the "Motion") as follows:

## RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of the following:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN are as follows: UPG Enterprises, LLC (4790); UP Investment Holdings LLC (8445); UPI LS LLC (6446); UPI MakUSA LLC (1401); UPG Metal Services LLC (8496); GenX Leasing Partners LLC (4464); UP Central Office LLC (0397); UP Equipment Holdings LLC (0431); Metalex LLC (6707); UPG Fabrication LLC (9021); National Metalwares Holdings LLC (2789); National Metalwares L.P. (9247); Sidecar NM LLC (4555); Chicago Steel Holdings LLC (0967); Douglass Logistics LLC (6025); Lexington Steel LLC (2209); Maksteel USA LLC (6796); Maksteel Transport LLC (9011); and UPG Flat Roll Group LLC (7515). The Debtors' mailing address is 1400 16th St., #250, Oak Brook, IL 60523.

a. an order, substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"):

i. authorizing and approving the proposed bidding procedures substantially in the form attached to the Bidding Procedures Order as **Exhibit 1** (the "Bidding Procedures") in connection with one or more sales or dispositions (collectively, the "Sale") of any and all or substantially all of the Debtors' assets (the "Assets");

ii. establishing the below dates and deadlines for the sale process:

| Date | Deadline |
|---|---|
| **Within five (5) business days of entry of the Bidding Procedures Order** | Deadline to mail Sale Notice and Contract Notice |
| **October 21, 2026, at 4:00 p.m. (CT)** | Deadline to file and serve Notices of Stalking Horse Bidder |
| **October 28, 2026, at 4:00 p.m. (CT)** | Sale Objection Deadline and Contract Objection Deadline[2] |
| **October 28, 2026, at 4:00 p.m. (CT)** | Bid Deadline |
| **October 30, 2026, at 4:00 p.m. (CT)** | Deadline for Debtors to Designate Qualifying Bids |
| **November 2, 2026, at 9:00 a.m. (CT)** | Auction |
| **As soon as practicable after completion of the Auction** | Deadline to file and serve Notice of Successful Bidder |
| **At the Sale Hearing** | Adequate Assurance Objection Deadline for Successful Bidder other than a Stalking Horse Bidder |
| **November 4, 2026, at 12:00 p.m. (CT), or noon one day before the Sale Hearing** | Debtors' Deadline to Reply to Sale Objections (other than Adequate Assurance Objections) |

[2] The Sale Objection Deadline and Contract Objection Deadline apply to all objections to the sale of the Assets and the assumption and assignment of the Assumed Contracts (including adequate assurance of future performance by a Stalking Horse Bidder), with the exception of objections related to adequate assurance of future performance by a Successful Bidder other than a Stalking Horse Bidder.

| | |
|---|---|
| **November 5, 2026, at 10:00 a.m. (CT), or if the Court is not available, the earliest date when the Court may accommodate a sale hearing** | Sale Hearing |
| **No later than November 19, 2026** | Sale Closing |

iii. approving the form and manner of notice of the auction, if any, for the Debtors' Assets (the "Auction"), the Sale and the hearing with respect to the approval of any Sale (the "Sale Hearing"), attached as **Exhibit 2** to the Bidding Procedures Order (the "Sale Notice");

iv. approving procedures for the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assumed Contracts") in connection with a Sale and approving the form and manner of notice thereof, attached as **Exhibit 3** to the Bidding Procedures Order (the "Contract Notice");

v. authorizing the Debtors in their discretion to (i) select one or more Stalking Horse Bidders (as defined below) and enter into one or more Stalking Horse Agreements (as defined below), and (ii) in connection with any Stalking Horse Agreement(s), provide the Bid Protections (as defined below) to the extent the Debtors determine that provision of such Bid Protections would be an actual and necessary cost of preserving the value of the Debtors' estates; and

vi. granting related relief; and

b. following entry of, and compliance with, the Bidding Procedures Order, one or more orders (each, a "Sale Order") at the Sale Hearing:

i. authorizing and approving the Sale of Assets to a Stalking Horse Bidder (as defined below) or otherwise Successful Bidder(s) (as defined below), as applicable (the "Purchaser"), free and clear of all liens, claims, interests, and encumbrances to the extent set forth in any Stalking Horse Agreement, or PSA (each defined below) with the otherwise Successful Bidder(s), as applicable;

ii. authorizing and approving the assumption and assignment of the Selected Assumed Contracts (as defined in the Contract Notice) as set forth in the PSA; and

iii. granting related relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois, and Local Rule 40.3.1 of that court. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The Debtors consent pursuant to 28 U.S.C. § 157(c)(2) and the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois ("Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution

4. The statutory and legal predicates for the relief sought herein are sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), as supplemented by rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 9013-1, 9090-1 and 9090-3.

## BACKGROUND

5. On September 22 and 23, 2026 (the "Petition Date"), the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee has been appointed in these cases.

6. The Debtors, along with their non-debtor affiliates, operating under the UPG family of brands, are a diverse set of industrial companies focused on steel processing and

production, manufacturing, distribution, and logistics. The Debtors' businesses are divided into two groups overseen by separate holding companies: (1) a flat roll group that processes steel into flat sheets or coils and (2) a fabrication group that manufactures finished steel components.

7. Additional detail regarding the Debtors, their businesses, the events leading to the commencement of these cases, and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of John Sordillo, Chief Restructuring Officer of the Debtors, in Support of Their Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed concurrently herewith and incorporated herein by reference.[3]

**THE SALE**

8. In consultation with their stakeholders and professionals, the Debtors have determined to pursue a marketing process to solicit bids for a Sale of any and/or substantially all the Debtor's assets under section 363 of the Bankruptcy Code (the "Sale"). The Debtors are pursuing a Sale to maximize the value of the estates, and will accept bids in the form of an asset purchase agreement. Permitting a Sale provides the Debtors with the flexibility to negotiate the precise terms of their ultimate emergence from chapter 11 and maximize the value of their estates.

9. Immediately preceding the Petition Date, the Debtors and their advisors appointed SC&H Capital ("SC&H") as the investment banker to assist with the marketing process.

10. In July 2026, SC&H commenced outreach to potential buyers. During the prepetition marketing process, SC&H contacted approximately 267 buyers, of which 86 executed confidentiality agreements. Potential buyers that executed confidentiality agreements received access to a confidential information memorandum that contained a detailed overview of the

[3] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the First Day Declaration.

Debtors' business operations, assets, commercial arrangements, and historical financial results. SC&H has maintained a dialogue with these potential buyers throughout the process and facilitated discussions between potential buyers and the Debtors' management.

11. The Debtors' efforts to date have been successful. After diligence, 10 interested parties submitted letters of interest ("LOIs"). The LOIs representing the highest value for the Debtors' assets required that the Debtors consummate the sale through a chapter 11 sale process in order to realize the values stated in the LOIs. As such, the Debtors began to negotiate with these potential buyers to develop the terms of an agreement to serve as a stalking horse.

## THE DESIGNATION OF STALKING HORSE BIDDERS

12. To foster competitive bidding, the Debtors understand the importance of establishing a "floor price" for their assets. To this end, by this Motion, the Debtors are seeking authority to (i) select one or more bidders to act as stalking horse bidders (each, a "Stalking Horse Bidder") and enter into a purchase agreement with each such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"), and (ii) in connection with any Stalking Horse Agreement, upon notice to all parties in interest and an opportunity to object, provide bid protections to such Stalking Horse Bidder, including a break-up fee and expense reimbursement (the "Bid Protections"), in each case payable from the proceeds of a Successful Bid (as defined herein) to the extent the Debtors determine that provision of such Bid Protections would be an actual and necessary cost of maximizing the value of the Debtors' estates.

13. As of the Petition Date, the following parties have submitted the following high bids for certain assets of the Debtors and seek the following bid protections:

| Stalking Horse Bidder | Assets | Purchase Price | Bid Protections |
|---|---|---|---|
| Bidder 1 | Assets of Maksteel Wyoming | $5,300,000 | Break-up fee of $150,000 |
| Bidder 2 | Substantially all assets of Chicago Steel and Lexington Steel (excluding accounts receivable) | $4,000,000, plus book value of inventory | Break-up fee of 3% |
| Bidder 3 | Assets of Metalex, LLC, located at the Debtors' Libertyville, Illinois Facility and certain assets located at the San Luis Potosí, Mexico Facility | $5,000,000 | Break-up fee of 3%; Expense Reimbursement up to $300,000 |

14. Each of these bids represents a going concern bid. By this Motion, the Debtors' seek authority to designate each of the foregoing bids as Stalking Horse Bids (collectively, the "Stalking Horse Bids") and to offer the foregoing bid protections, provided, however, that each of the foregoing potential Stalking Horse Bidders execute binding purchase agreements consistent with the foregoing. The Debtors plan to utilize the chapter 11 process to continue their comprehensive, strategic marketing process to solicit higher and better offers than the Stalking Horse Bids. To that end, SC&H will continue to distribute marketing materials including a confidential information memorandum, additional due diligence materials, and establishing an electronic data room ("Data Room") for buyers to adequately perform diligence and assess the potential Sale. The Debtors and their advisors commit to working with all interested parties and any additional parties to provide all necessary diligence and continue to actively seek potential interested purchasers.

15. If the Debtors determine to offer Bid Protections to one or more Stalking Horse Bidder(s), the Debtors shall disclose such bid protections in any corresponding notice

designating a Stalking Horse Bidder (the "Notice of Stalking Horse Bidder") to be filed on or before **October 21, 2026, at 4:00 p.m. (CT)**. Each Notice of Stalking Horse Bidder, if any, shall also include a copy of the applicable Stalking Horse Bidders' Stalking Horse Agreement(s). An appropriate declaration in support of the proposed Bid Protections (the "Bid Protections Declaration") and a proposed form of order approving the Bid Protections (the "Bid Protections Order") shall be attached to the Notice of Stalking Horse Bidder. Any objection to (i) the Bid Protections set forth in the Notice of Stalking Horse Bidder and Bid Protections Declaration or (ii) the form of the Bid Protections Order (a "Bid Protections Objection"), shall be filed no later than **4:00 p.m. (CT) five business days after the filing of the Notice of Stalking Horse Bidder**. The Notice of Stalking Horse Bidder and Bid Protections Declaration shall set forth the reasons the Debtors believe the Bid Protections satisfy the requirements of section 503(b) of the Bankruptcy Code. If a timely Bid Protections Objection is filed, the Debtors will schedule a hearing in consultation with any objecting parties, the Consultation Parties (as defined below), and the Court, subject to the Court's availability. Absent any timely Bid Protections Objection, the Debtors request that the Court may enter the Bid Protections Order without further hearing.

16. Having the flexibility to designate a Stalking Horse Bidder and provide Bid Protections will provide the Debtors with the ability to maximize the value of the Assets. Given the Debtors' need to maximize value for creditors and other stakeholders through a timely and efficient marketing and sale process, the ability to designate a Stalking Horse Bidder and offer Bid Protections to such bidder (although the Debtors ultimately may, in the exercise of their business judgment, not designate a Stalking Horse Bidder at all) is a reasonable and sound exercise of the Debtors' business judgment and provides an actual benefit to the Debtors' estates.

## THE PROPOSED SALE AND BIDDING PROCEDURES

### A. The Bidding Procedures[4]

17. The Bidding Procedures set forth the process by which the Debtors will solicit and select the highest or best bids in the form of an asset purchase agreement. Toward that end, and for the avoidance of doubt, a Qualifying Bid or a Successful Bid may take the form of a transaction to be consummated through a section 363 sale of a portion, all, or substantially all of the Assets.

18. The Bidding Procedures shall apply to Potential Bidders (as defined below), the Qualifying Bidders (as defined below), the submission, receipt, and analysis of all bids, and the conduct of the Sale and the Auction, and contain the following key terms:

(a) **Form of Purchase and Sale Agreement**: The Debtors have drafted a form of Purchase and Sale Agreement (together with all ancillary documents and agreements, the "PSA") for parties interested in acquiring Assets. The Debtors intend to provide copies of the form of PSA to all Potential Bidders and will also make such form of PSA available in the confidential electronic data room concerning the Assets, established by the Debtors in connection with their marketing process (the "Data Room"). Pursuant to the form of PSA, the Successful Bidder shall acquire the Assets purchased thereby free and clear of any and all interests to the maximum extent permitted by section 363 of the Bankruptcy Code subject to certain other conditions, with such interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such interests applied against the Assets.

(b) **Participation Requirements**: Any person or entity that wishes to participate in the bidding process (each, a "Potential Bidder") must first become a "Qualifying Bidder" in the reasonable discretion of the Debtors after consultation with the Consultation Parties (as defined below). In order to become a Qualifying Bidder and thus be able to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "Data Room"), a Potential Bidder must submit to the Debtors and their advisors (unless waived by

---

[4] Any summary of the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures Order. To the extent any inconsistencies exist between the summary provided in this Motion and the actual terms and conditions of the Bidding Procedures, the Bidding Procedures Order controls.

the Debtors) an executed nondisclosure or confidentiality agreement in form and substance reasonably satisfactory to the Debtors.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) any Stalking Horse Bidder is a Qualifying Bidder, and any Stalking Horse Agreement is a Qualifying Bid (as defined below); and (ii) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

(c) **Due Diligence**: The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to: (a) the Debtors' Investment Bankers, SC&H (Hank Waida (hwaida@schgroup.com); and/or (b) Derek C. Abbott (dabbott@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); Tamara K. Mann (tmann@morrisnichols.com); Liam Davis (ldavis@morrisnichols.com); and Cicely Berzack (cberzack@morrisnichols.com) and Michael M. Eidelman (meidelman@vedder.com) and William W. Thorsness (wthorsness@vedder.com). The due diligence period shall extend through and including the Bid Deadline. The Debtors may, but shall not be obligated to, in their sole discretion, furnish any due diligence information after the Bid Deadline. The Debtors reserve the right, in their reasonable discretion and after consultation with the Consultation Parties, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder. Notwithstanding any prepetition limitations, including, without limitation, any nondisclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and the Sale.

(d) **Bid Requirements**:

i. *Qualifying Bid*. Other than in the case of any Stalking Horse Bid, to be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements (each, a "Bid Requirement"):

a. be in writing;

b. fully disclose the identity of the Qualifying Bidder and provide the contact information of the specific person(s) whom the Debtors or

their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

c. set forth the purchase price to be paid by such Qualifying Bidder, which in all events must exceed the amount of any Stalking Horse Bid for the applicable Assets by at least $100,000 of the purchase price, unless otherwise required by a Stalking Horse Agreement, plus the amount of the Bid Protections;

d. not propose payment in any form other than cash (except as otherwise expressly set forth in the Bidding Procedures);

e. state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

f. specify the Assets that are included in the bid and, to the extent the Debtors file a Notice of Stalking Horse Bidder, state that such Qualifying Bidder offers to (i) purchase the Assets, or a number or combination of the Assets, and (ii) assume liabilities upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse Agreement(s);

g. be accompanied by a purchase and sale agreement (the "PSA") marked to reflect any variations from the Stalking Horse Agreement(s), if applicable;

h. state that such Qualifying Bidder's offer is formal, binding, unconditional, and is irrevocable until five (5) business days after the closing of the Sale for the applicable Assets;

i. state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the PSA and provide written evidence in support thereof;

j. contain such financial and other information to allow the Debtors to make a reasonable determination, after consultation with the Consultation Parties, as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the PSA, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve such information on any counterparties to any contracts or

leases potentially being assumed and assigned in connection with the Sale. The Debtors shall provide all such financial information and adequate assurance documentation to the senior prepetition secured creditors that are Consultation Parties and hold a lien in the assets subject to such bid, subject to appropriate confidentiality protections;

k. identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the transactions contemplated by the PSA;

l. a commitment to close the transactions contemplated by the PSA by no later than November 19, 2026;

m. not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

n. not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

o. contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures;

p. sets forth (i) a statement or evidence that the Qualifying Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings, and (ii) any regulatory and third-party approval, including any CFIUS approval, required for the Qualifying Bidder to close the transactions contemplated by the PSA, and the time period within which the Qualifying Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such Qualifying Bidder's PSA, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); provided that a Qualifying Bidder agrees that its legal counsel will coordinate in

good faith with Debtors' and Consultation Parties' legal counsel to discuss and explain Qualifying Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the PSA; provided, further that the offer contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

q. provides for the Qualifying Bidder to serve as a backup bidder (the "Backup Bidder") if the Qualifying Bidder's bid is selected as such by the Debtors in consultation with the Consultation Parties (the "Backup Bid");

r. includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the PSA;

s. provides a good faith cash deposit (the "Deposit") in an amount equal to ten percent (10%) of the purchase price provided for in the PSA (or such additional amount as may be determined by the Debtors in their reasonable discretion and after consultation with the Consultation Parties), provided, however, that if a Qualifying Bidder becomes a Successful Bidder or a Backup Bidder, they must increase the Deposit to ten percent (10%) of the new purchase price within one (1) business day after the Auction; and

t. provides that the Deposit shall be forfeited to the Debtors in the event of the Qualifying Bidder's breach of, or failure to perform under, the PSA, without prejudice to any and all other rights and remedies of the Debtors. Any forfeited Deposit shall constitute proceeds of the Assets subject to the bid and shall be subject to the applicable liens and security interests of secured creditors (and any adequate protection liens and claims granted by the Court to secured creditors) with the same validity, extent and priority as such liens applied against the Assets.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors reserve the right to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions

of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

ii. *Stalking Horse Bidders and Bid Protections*. The Debtors shall be authorized, but not obligated, in an exercise of their business judgment and in consultation with the Consultation Parties, to select one or more Qualifying Bidders to act as stalking horse bidders in connection with the Sale (each, a "Stalking Horse Bidder"), and enter into a purchase agreement, in form and substance acceptable to the Stalking Horse Bidder, subject to higher or otherwise better offers at the Auction, with respect to a Sale with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"). To induce a bidder (other than an insider) to serve as a Stalking Horse Bidder, the Debtors shall be authorized, in consultation with the Consultation Parties, to offer a break-up fee, not to exceed 3% of the purchase price, and reimbursement of reasonable and documented expenses (together, the "Bid Protections"). To the extent the Debtors, after consultation with the Consultation Parties, determines to designate one or more Stalking Horse Bidders, the Debtors shall file a notice of designation of such Stalking Horse Bidder(s) and disclose any Bid Protections (the "Notice of Stalking Horse Bidder") on or before **October 21, 2026, at 4:00 p.m. (CT)**. Each Stalking Horse Bidder Notice, if any, shall also include a copy of the applicable Stalking Horse Bidders' Stalking Horse Agreement(s).

iii. *Bid Deadline; Stalking Horse Bid Deadline*. A Potential Bidder, other than any Stalking Horse Bidder, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Bidding Procedures Notice Parties (as defined in the Bidding Procedures) and the Consultation Parties so as to be received **on or before October 28, 2026, at 4:00 p.m. (CT) (the "Bid Deadline")**; provided that the Debtors may extend the Bid Deadline without further order of the Court, after consultation with the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these chapter 11 cases indicating the same.

iv. *Evaluation of Qualifying Bids*. The Debtors will deliver, within one (1) day after receipt thereof, copies of all bids from Potential Bidders to the Consultation Parties. The Debtors, after consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid. Prior to the start of the Auction, the Debtors shall: (i) notify all Potential Bidders whether their bids have been determined to be a Qualifying Bid; and (ii) determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid for purposes of constituting the opening

bid of the Auction (the "Baseline Bid" and the Qualifying Bidder submitting the Baseline Bid, the "Baseline Bidder").

v. *No Qualifying Bids*. If no Qualifying Bids for any or substantially all Assets other than a Stalking Horse Bid are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that the Court approve the Debtors entry into and performance under the relevant Stalking Horse Agreement(s) and the transactions contemplated thereunder.

vi. *Right to Credit Bid*. Any creditor that has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall be deemed to be a Qualified Bidder with respect to such assets, notwithstanding anything to the contrary in these Bidding Procedures, and shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code, including at the Auction; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor has a valid and perfected lien; and provided further that any credit bid by a Secured Creditor shall contain a cash component sufficient to repay in full the secured claims of a senior Secured Creditor, if any (unless such senior Secured Creditor agrees to a different treatment), and any transaction fee for the Debtors' investment banker(s).

(e) **Auction**: If the Debtors receive one or more timely Qualifying Bids other than a Stalking Horse Bid for particular Assets, then the Debtors shall conduct the Auction. For the avoidance of doubt, if there are timely Qualifying Bids submitted other than a Stalking Horse Bid, the Stalking Horse Bidder will participate in the Auction. Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bids are Successful Bids or Backup Bids (each as defined below), as applicable, which will be determined by considering, among other things, the following non-binding and non-exclusive factors: (a) the number, type and nature of any changes to the Stalking Horse Agreement(s), if applicable, and, if not applicable, the PSA; (b) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors and their estates of such modifications or delay; (c) the total consideration to be received by the Debtors and their estates; (d) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (e) the net benefit to the Debtors' estates; (f) the assumption of executory contracts and unexpired leases; and (g) any other factors the Debtors may reasonably deem relevant. The Auction shall be governed by the following procedures:

i. the Auction shall be held on **November 2, 2026, at 9:00 a.m. (CT)** at the offices of Vedder Price, P.C., 222 N. La Salle St., Chicago, Illinois 60601,

or on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with the Consultation Parties;

ii. only the Qualifying Bidders with Qualifying Bids (the "Auction Bidders"), shall be entitled to make any subsequent bids at the Auction;

iii. each Auction Bidder must attend the Auction, either on its own behalf or through a duly authorized representative with power to bind such Auction Bidder at the Auction; provided, that the Debtors may permit in consultation with the Consultation Parties, Auction Bidders to attend remotely;

iv. only the Debtors, the Auction Bidders, the Consultation Parties, and any creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction; provided that any such creditors provide counsel for the Debtors one (1) day's prior written notice of their intent to attend the Auction, including the name, title, contact information, and affiliation of any individual attending on behalf of such creditor; provided that creditors may only attend the auction to observe the proceedings and shall not be entitled to participate; provided further that the Debtors' right to object on an emergency basis to any such creditor's proposed attendance at the Auction is reserved;

v. the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

vi. the Auction Bidders shall confirm on the record that they have not engaged in any collusion with respect to their bid, the Bidding Procedures, the Auction or the Sale;

vii. bidding shall commence at the amount of the Baseline Bid, and subsequently continue in minimum increments in an amount to be determined by the Debtors in consultation with the Consultation Parties (each, an "Overbid"), provided that: (i) each Overbid must be a Qualifying Bid; and (ii) the Debtors, in consultation with the Consultation Parties, shall retain the right to modify the bid increment requirements at the Auction or to require other modifications of the particular bidding format, including without limitation, separate rounds of bulk and/or lot bidding, sealed bidding, open outcry, or any other form of bid submission (including in connection with any bulk or lot bidding);

viii. any Overbid must remain open and binding on the Qualifying Bidder until five business days following the closing of the Sale;

ix. the Auction may include separate discussions or negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all Auction Bidders;

x. the Auction Bidders may not speak with other Auction Bidders absent authority from the Debtors;

xi. all material terms of the bid that is deemed to be the highest or otherwise best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

xii. the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional or modified procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids or the bidding format, including without limitation, separate rounds of bulk and/or lot bidding, sealed bidding, open outcry, or any other form of bid submission (including in connection with any bulk or lot building)) for conducting the Auction, provided that such rules are (i) not materially inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court entered in connection with these chapter 11 cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

xiii. each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

xiv. the Auction Bidders shall have the right to make additional modifications to their respective PSA for purposes of making an Overbid;

xv. the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the PSA as may be amended during the Auction and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

xvi. upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, subject to Court approval, the

offer or offers for the Assets that is or are the highest or otherwise best from among the Qualifying Bids submitted at the Auction (the "Successful Bid(s)"). In making this decision, the Debtors may consider, in consultation with the Consultation Parties, among other things, the amount of the purchase price, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Stalking Horse Agreement(s) or PSA, as applicable, requested by each bidder, and the net benefit to the Debtors' estates. The bidder(s) submitting such Successful Bid(s) shall become the "Successful Bidder(s)," and shall have such rights and responsibilities of the purchaser as set forth in the applicable agreement(s). The Debtors may, in their sole discretion, after consultation with the Consultation Parties, designate one or more Backup Bids (and the corresponding Backup Bidder(s)) to acquire the Assets in the event that the Successful Bidder(s) does not close the Sale(s); and

xvii. prior to the Sale Hearing, the Successful Bidder(s) shall complete all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made;

xviii. prior to the Sale Hearing, the Successful Bidder(s) and Backup Bidder(s) shall increase their respective Deposits to ten percent (10%) of the new purchase price within one (1) business day after the Auction, unless the Debtors agree otherwise in consultation with the Consultation Parties.

**THE SUCCESSFUL BID(S) AND ANY BACKUP BID(S) SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER(S) AND THE BACKUP BIDDER(S), RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL FIVE (5) BUSINESS DAYS AFTER THE SALE HAS CLOSED.**

(f) **Sale Hearing**: The Successful Bid(s) and any Backup Bid(s) (or if no Qualifying Bid other than a Stalking Horse Bid is received, then the Stalking Horse Bid(s) as the Successful Bid) will be subject to approval by the Court. If the Successful Bid was for a Sale, a hearing to approve the Successful Bid(s) and any Backup Bid(s) for the Sale of the Debtors' Assets shall take place on **November 5, 2026, at 10:00 a.m. (CT)**. After consultation with the Consultation Parties, the Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of these chapter 11 cases.

(g) **Backup Bidder**: If the Successful Bid was for a Sale, and notwithstanding any of the foregoing, in the event that the Successful Bidder(s) fails to close the Sale prior to **November 19, 2026** (or such date as may be extended by the Debtors, in consultation with the Consultation Parties), the Backup Bid will be deemed to be

the Successful Bid, the Backup Bidder will be deemed to be the Successful Bidder, and the Debtors shall be authorized, but not directed, to close a Sale to the Backup Bidder subject to the terms of the Backup Bid without the need for further order of the Court and without the need for further notice to any interested parties; provided, however, that the Debtors shall provide at least one (1) business day prior written notice to the senior prepetition secured creditor that has a lien on any of the Assets that are being sold before closing on the Backup Bid, and shall not close on the Backup Bid over the timely written objection of such secured creditor without further order of the Court.

(h) **Return of Deposits**: All Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Backup Bidder, no later than five (5) business days following the closing of the Auction. For the avoidance of doubt, the Debtors' retention of a Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Successful Bidder's or Backup Bidder's breach or failure to close and all such rights and remedies are preserved.

(i) **Notice and Consultation Parties**:

a) The term "Bidding Procedures Notice Parties" as used in these Bidding Procedures shall mean: (i) proposed counsel to the Debtors, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Derek C. Abbott (dabbott@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); Tamara K. Mann (tmann@morrisnichols.com); Liam Davis (ldavis@morrisnichols.com); and Cicely Berzack (cberzack@morrisnichols.com); (ii) proposed co-counsel to the Debtors, Vedder Price, P.C., 222 N. La Salle St., Chicago, Illinois 60601, Attn: Michael M. Eidelman (meidelman@vedder.com) and William W. Thorsness (wthorsness@vedder.com); and (iii) investment banking advisor to the Debtors, SC&H (Hank Waida (hwaida@schgroup.com**)**.

b) The term "Consultation Parties" as used in these Bidding Procedures shall mean: (i) counsel to the Proposed DIP Lenders; (ii) counsel to any Official Committee of Unsecured Creditors; and (iii) each of Wintrust and White Oak, each as a prepetition secured agent for certain lenders and a lender, but only with respect to Assets that are subject to the liens of the respective prepetition secured agent and lenders.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment. Nothing in this paragraph shall limit, modify, or otherwise waive the Debtors' fiduciary duties obligations to their creditors.

In the event that any Consultation Party or any member of the Committee or an affiliate of any of the foregoing actually submits a bid that is a Qualifying Bid, any

obligation of the Debtors to consult with the bidding party regarding Qualifying Bids submitted by other parties and/or the selection of a Successful Bidder and Backup Bidder established under these Bidding Procedures will be waived without further action; provided that the bidding party will have the same rights as any other Qualifying Bidder set forth above. To the extent any such Consultation Party that has submitted a Qualifying Bid ceases to participate in the sale process or Auction for any reason, their full consultation rights provided for herein shall be immediately restored without further action.

If a member of the Committee submits a Qualifying Bid, the Committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that the Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any information regarding the sale of the Assets to such member.

(j) **Reservation of Rights**: Notwithstanding any of the foregoing, the Debtors and their estates reserve the right, after consultation with the Consultation Parties, to modify the Bidding Procedures at, prior to, or during the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments or the bidding format for one or more of the bidding rounds, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing or any other hearing.

19. The Debtors, in consultation with their advisors, believe that the timeline set forth in the Bidding Procedures will provide parties with sufficient time to obtain information necessary to formulate a competitive bid, maximizing the prospect that the Debtors will receive offers that will benefit the Debtors' estates and their stakeholders. The Debtors submit that the sale process is reasonable in time and scope, and will permit sufficient time for any interested bidders to conduct their due diligence with respect to the Assets and formulate bids on the Assets. Accordingly, the Debtors believe the relief requested in this Motion is in the best interest of the Debtors' estates, will provide interested parties with sufficient opportunity to participate, and thus should be approved.

**I. Form and Manner of Sale Notice**

20. Within five (5) business days of entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice on the following parties or their respective counsel, if known (collectively, the "Sale Notice Parties"): (i) the Office of the United States Trustee for Region 11, 219 South Dearborn, Room 873, Chicago, IL 60604, Attn: Adam Brief (adam.brief@usdoj.gov); (ii) counsel to any statutory Committee; (iii) all parties known by the Debtors to assert a lien on any of the Assets, including the senior prepetition secured creditors; (iv) all persons known or reasonably believed to have asserted an interest in any of the Assets; (v) all persons known or reasonably believed to have expressed an interest in acquiring Assets; (vi) the Office of the United States Attorney for the Northern District of Illinois; (vii) the Office of the Attorney General in each state in which the Debtors operate; (viii) the Office of the Secretary of State in each state in which the Debtors have operated; (ix) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (x) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (xi) the Federal Trade Commission; (xii) the United States Attorney General/Antitrust Division of Department of Justice; (xiii) all non-Debtor parties to any of the Assumed Contracts; (xiv) all of the Debtors' other known creditors and equity security holders; and (xv) all parties that have filed a notice of appearance and demand for service of papers in the chapter 11 cases as of the service date.

21. In addition, as soon as practicable, after entry of the Bidding Procedures Order, the Debtors will publish the Sale Notice, with any modification necessary for ease of publication, once in the national edition of a newspaper with national circulation to provide notice to any other potential interested parties.

## II. The Sale Hearing and Sale Objection Deadline

22. The Debtors intend to present a Stalking Horse Bid or otherwise Successful Bid(s) for approval by the Court pursuant to sections 105, 363 and 365 of the Bankruptcy Code at the Sale Hearing. The Debtors respectfully request that the Sale Hearing be scheduled for **November 5, 2026, at 10:00 a.m. (CT)**; *provided, however*, after consultation with the Consultation Parties, that the Sale hearing may be continued by the Debtors from time to time. Upon the failure to consummate a sale of the Assets after the Sale Hearing because of the occurrence of a breach or default under the terms of the Successful Bid(s) or the non-approval of this Court, after consultation with the Consultation Parties, the next highest or otherwise best Backup Bid(s), if any, as disclosed at the Sale Hearing, shall be deemed the Successful Bid(s) without further order of the Court, and the parties shall be authorized to consummate the transaction contemplated by the Backup Bid(s).

23. The Debtors further request that any and all objections to a Sale of the Assets and entry of a Sale Order: (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Code, Bankruptcy Rules, the Local Rules and all orders of the Court entered in these chapter 11 cases, (iii) be filed with the Court no later than (a) **October 28, at 4:00 p.m. (CT)** (the "Sale Objection Deadline"), and (iv) be served on the following parties (collectively, the "Objection Notice Parties"): (a) proposed counsel to the Debtors: Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Derek C. Abbott (dabbott@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); Tamara K. Mann (tmann@morrisnichols.com); Liam Davis (ldavis@morrisnichols.com); and Cicely Berzack (cberzack@morrisnichols.com); (b) proposed co-counsel to the Debtors: Vedder Price, P.C., 222 N. La Salle St., Chicago, Illinois 60601, Attn:

Michael M. Eidelman (meidelman@vedder.com) and William W. Thorsness (wthorsness@vedder.com); (c) counsel to any Official Committee of Unsecured Creditors; (d) the Office of the United States Trustee (the "U.S. Trustee") for Region 11, 219 South Dearborn, Room 873, Chicago, IL 60604, Attn: Adam Brief adam.brief@usdoj.gov); (e) counsel to the DIP Lender, DLA Piper LLP (US), 444 West Lake Street, Suite 900, Chicago, IL 60606 (Attn: John Lyons (john.lyons@us.dlapiper.com) and Gregory Juell (gregory.juell@us.dlapiper.com)); (f) counsel to White Oak Commercial Finance, LLC, as prepetition secured agent and lender, Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, IL 60603 (Attn: Dimitri G. Karcazes (Dimitri.Karacazes@goldbergkohn.com) and Eva D. Gadzheva (Eva.Gadzheva@goldbergkohn.com)); (g) counsel to the Wintrust Lenders, Seyfarth Shaw LLP, 233 S. Wacker Drive, Suite 8000, Chicago, IL 60606 (Attn: Nicholas R. Marcus (nmarcus@seyfarth.com) and Gus Paloian (gpaloian@seyfarth.com); and (h) any Stalking Horse Bidders.

## ASSUMPTION AND ASSIGNMENT PROCEDURES

24. To facilitate the Sale, the Debtors seek authority to assume and assign to the Successful Bidder, the Assumed Contracts in accordance with the Assumption and Assignment Procedures. Those procedures are as follows:

(a) Within five (5) business days following entry of the Bidding Procedures Order (the "Contract Notice Deadline"), the Debtors shall file with the Court and serve on each counterparty to an Assumed Contract (each, a "Counterparty," and collectively, the "Counterparties") the Contract Notice. If the Debtors identify additional Assumed Contracts that might be assumed by the Debtors and assigned to a Successful Bidder, the Debtors will promptly file with the Court and send a supplemental Contract Notice (a "Supplemental Contract Notice") to the applicable counterparties to each such Assumed Contract.

(b) The Contract Notice (including any Supplemental Contract Notice) shall include, without limitation, the cure amount (each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assumed Contracts.

If a Counterparty objects to (i) the assumption and assignment of the Counterparty's Assumed Contract, (ii) the Cure Amount for its Assumed Contract or (iii) the provision of adequate assurance of future performance, the Counterparty must file with the Court and serve on the Objection Notice Parties a written objection (a "Contract Objection").

(c) Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, the Local Rules and all orders of the Court entered in these chapter 11 cases; (iii) state the basis for such objection; (iv) if such objection is to the Cure Amount, state with specificity what Cure Amount the Counterparty believes is required (in all cases, with appropriate documentation in support thereof); and (v) be filed with the Court and served on the Objection Notice Parties by no later than **October 28, 2026, at 4:00 p.m. (CT)** (the "Contract Objection Deadline"); provided that counterparties to Assumed Contracts identified on a Supplemental Contract Notice filed less than seven (7) days prior to the Contract Objection Deadline shall have seven (7) days from the service of such Supplemental Contract Notice to object to the proposed assumption and assignment of such Assumed Contracts.

Any objections to adequate assurance of performance by a Stalking Horse Bidder shall be filed by the Contract Objection Deadline. Any objections solely related to the adequate assurance of future performance by a Successful Bidder(s) (other than the Stalking Horse Bidder) shall be **at the Sale Hearing** (the "Adequate Assurance Objection Deadline").

(d) As soon as reasonably practicable after the completion of the Auction, or to the extent an Auction is not necessary, then after the Debtors' determination of the Qualifying Bids (in consultation with the Consultation Parties), the Debtors shall file with the Court one or more notices identifying each Successful Bidder (a "Notice of Successful Bidder"), which shall set forth, among other things, the Successful Bidder and Backup Bidder (if any). For the avoidance of doubt, if the Debtors do not timely receive any Qualifying Bids other than a Stalking Horse Bid, the Stalking Horse Bidder shall be deemed the Successful Bidder.

(e) As soon as reasonably practicable after the completion of the Auction or, to the extent an Auction was not necessary, after the Debtors' determination of the Qualifying Bids (in consultation with the Consultation Parties), the Debtors will cause to be served by overnight mail upon each affected Counterparty and its counsel (if known) the Notice of Successful Bidder.

(f) At the Sale Hearing, the Debtors will seek Court approval of their assumption and assignment to the Successful Bidder of only those Assumed Contracts that have been selected by the Successful Bidder to be assumed and assigned (the "Selected Assumed Contracts"). The Debtors and their estates reserve any and all rights with respect to any Assumed Contracts that are not ultimately designated as Selected Assumed Contracts.

(g) If no Contract Objection is timely received with respect to a Selected Assumed Contract: (i) the Counterparty to such Selected Assumed Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the Selected Assumed Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Selected Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assumed Contract against the Debtors and their estates or the Successful Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

(h) To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors; provided, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assumed Contract may be assumed by the Debtors and assigned to the Successful Bidder provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the Successful Bidder, pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

(i) Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order additional executory contracts or unexpired leases of the Debtors are determined to be executory contracts or unexpired leases that the Successful Bidder seeks to assume and assign, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by overnight delivery, on the Counterparties a Contract Notice, and such Counterparties shall file any Contract Objections no later than seven (7) days thereafter; *provided*, *however*, any such Contract Objections shall be solely with respect to the proposed cure amount contained therein and only to the extent such objection could not have been raised prior to the Contract Objection Deadline. If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Assumed Contracts to the Successful Bidder without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order.

## BASIS FOR RELIEF

**A. The Court Should Approve the Bidding Procedures.**

25. The key objective in any sale of property of a debtor's estate is to maximize the value received by the estate. *See In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995) (when a debtor or trustee conducts a sale under section 363(b), "it has an obligation to maximize revenues for the estate"). Procedures used to enhance competitive bidding support this objective and, therefore, are appropriate in the context of bankruptcy sales. *See Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004) (bankruptcy courts must be accorded "maximum discretion" in striking an appropriate balance in pursuit of estate maximization); *see also Integrated Res. Inc.*, 147 B.R. at 659 (stating that bidding procedures "encourage bidding and . . . maximize the value of the debtor's assets").

26. The Debtors have designed the Bidding Procedures to promote a competitive and fair bidding process and, thus, to maximize value for the Debtors' estates and creditors. The Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders, thereby increasing the likelihood that the Debtors will receive the highest or best possible bid. Furthermore, the Bidding Procedures provide an appropriate framework for the Debtors to review, analyze and compare any bids received in order to determine which bids are in the best interests of the Debtors' estates and their creditors.

27. The Debtors are seeking authority to designate one or more Stalking Horse Bidders and, upon providing notice and an opportunity to object for parties in interest, offer Bid Protections to each such Stalking Horse Bidder. The use of a stalking horse in a public auction process for sales is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a

framework for competitive bidding and facilitat[ing] a realization of that value." *Interforum Holding LLC*, 2011 WL 2671254 at *1 n.1 (E.D. Wis. July 7, 2011). As a result, stalking horse bidders virtually always require break-up fees and, in many cases, other forms of bidding protections as an inducement for "setting the floor at auction, exposing its bid to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement." *Id.* (citation omitted). Thus, the use of bidding protections has become an established practice in chapter 11 cases.

28. Indeed, break-up fees and other forms of bidding protections are a normal and, in many cases, necessary component of significant sales conducted in chapter 11. *See Integrated Res.*, 147 B.R. at 659–60 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . In fact, because the directors of a corporation have a duty to encourage bidding, break-up fees can be necessary to discharge the directors' duties to maximize value."). Specifically, bid protections "may be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking." *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (citation and quotations omitted); *see also Integrated Res.*, 147 B.R. at 660–61 (noting bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid").

29. As a result, courts in this Circuit routinely approve such bidding protections in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate. *See In re CXM, Inc.*, 307 B.R. 94, 103 (Bankr. N.D. Ill. 2004) (an unsuccessful bidder's request for a break-up fee "constitutes an administrative expense request, and its allowability should be therefore determined under 11 U.S.C. § 503(b) in the same manner as other administrative expense requests"); *In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995)

(the test is "whether the payment of a breakup fee is in the best interests of the estate"). The allowance of Bid Protections, in the event that the Debtors execute any Stalking Horse Agreement, is in the best interests of the Debtors' estates and their creditors, as any Stalking Horse Agreement will establish a floor for further bidding that may increase the consideration given in exchange for the Assets, which will inure to the benefit of the Debtors' estates.

30. Understanding, though, that a Stalking Horse Bidder has not yet been selected, the necessity of Bid Protections as to any particular Stalking Horse Bidder has not yet been established. Therefore, if the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, determine to offer Bid Protections to any Stalking Horse Bidder, the Debtors shall disclose such Bid Protections and allow time for parties in interest to lodge objections thereto, as set forth in further detail in the Bidding Procedures.

31. The Debtors submit that this procedure appropriately balances the concerns of those interests that are affected by the Bid Protections with the ability of the Debtors to incentivize bidders to serve as a stalking horse to maximize value for the estates. Further, any Bid Protections will be negotiated through good faith, arm's length negotiations.

32. By inducing the Stalking Horse Bidder to hold its offer open as a baseline from which other potential bidders can submit higher or better offers, the Bid Protections will serve to encourage more competitive bidding that will potentially increase the purchase price of the Assets, maximizing the value of the Debtors' estates for the benefit of all economic stakeholders in these chapter 11 cases. Substantially similar procedures have been approved in this district. *See In re Gas City, Ltd.*, 2010 WL 6982540, at 1 (Bankr. N.D. Ill. Oct. 26, 2010) (approving stalking-horse break-up fees and overbid requirements "in their entirety"); *In re Keywell L.L.C.*, 2013 WL 6508970, at 1–2 (Bankr. N.D. Ill. Oct. 21, 2013) (approving bidding procedures, bid protection,

and break-up fee as "an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of §§ 503(b) and 507(a)(2)"); *In re OHCMC-Oswego, LLC*, 2014 WL 3388053, at 1 (Bankr. N.D. Ill. June 17, 2014) (approving stalking-horse APA and break-up fee); *In re River West Plaza-Chicago, LLC*, 2013 WL 12568571, at 1 (Bankr. N.D. Ill. June 5, 2013) (approving bid protection provisions and authorizing designation of the stalking-horse bidder).

33. If the Court does not authorize the Debtors to offer the Bid Protections, a Stalking Horse Bidder, to the extent one may otherwise exist, may elect not to serve as the stalking horse, to the detriment of the Debtors' estates. Further, if the Bid Protections were to be paid, it will be because the Debtors have received higher or otherwise superior offers for the Assets. In short, the proposed Bid Protections are fair and reasonable under the circumstances because they constitute a "fair and reasonable percentage of the proposed purchase price" and are "reasonably related to the risk, effort, and expenses of the prospective purchaser." *Integrated Res*., 147 B.R. at 662 (quoting *995 Fifth Ave.*, 96 B.R. at 28). The Bid Protections are a sound exercise of the Debtors' business judgment and are in the best interests of the Debtors, their estates, and all stakeholders. Accordingly, subject to the conditions set forth in the Bidding Procedures, the Debtors should be authorized to offer Bid Protections to potential Stalking Horse Bidders.

34. Moreover, the Secured Creditors should be authorized to credit bid for the Assets under section 363(k) of the Bankruptcy Code. Section 363(k) of the Bankruptcy Code provides that, unless the court for cause orders otherwise, the holder of a claim secured by property that is the subject of a sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k). Even if a secured creditor is undersecured as determined in accordance with section 506(a) of the Bankruptcy Code, section 363(k) allows such secured creditor to bid the full face

value of its claim and does not limit the credit bid to the claim's economic value. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 644 (2012) (a sale of collateral free and clear is "subject to section 363(k)" and the secured creditor "may credit-bid at the sale, up to the amount of its claim"); *River Rd. Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 648–52 (7th Cir. 2011), *aff'd sub nom. RadLAX*, 566 U.S. 639.

35. As a result, the Debtors propose that creditors whose claims are secured by valid, binding, enforceable, non-avoidable and perfected liens on and security interests in the Assets be entitled to credit bid all or a portion of the principal amount of the secured debt owed to such creditors under section 363(k) of the Bankruptcy Code, subject to the Bidding Procedures.

36. The Debtors submit that the Bidding Procedures are fair and transparent and will derive the highest or best bids. Therefore, the Debtors request the Court approve the Bidding Procedures.

**B. Sufficient Business Justification Exists for Consummation of the Sale Under Sections 105(a) and 363(b) of the Bankruptcy Code**

37. Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. *See Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor in possession may sell estate property outside the ordinary course where it has an "articulated business justification"); *In re Efoora, Inc.*, 472 B.R. 481, 488–89 (Bankr. N.D. Ill. 2012) (applying

the deferential "business judgment" test and according a sound business reason "great judicial deference"); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983).

38. The demonstration of a valid business justification by the debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

39. The Debtors submit that their decision to consummate a Sale represents a reasonable exercise of the Debtors' business judgment and, accordingly, any Sale that complies with the procedures set forth herein should be approved under sections 105(a) and 363(b) of the Bankruptcy Code. The Debtors will conduct an extensive and complete process to market the Assets. The open and fair auction and sale process contemplated by the Bidding Procedures will ensure that the Debtors' estates receive the highest or otherwise best value available for the Assets, and will provide a greater recovery than would be provided by any other available alternative. Furthermore, compliance with the Bidding Procedures will ensure the fairness and reasonableness of the consideration to be paid by a Stalking Horse Bidder, if any, or other Successful Bidder, and establish that the Debtors and such bidder have proceeded in good faith.

40. Additionally, the Debtors believe that the notice procedures described above are reasonable and adequate under the circumstances. Bankruptcy Rules 2002(a) and (c) require the Debtors to notify creditors of the Sale, the terms and conditions of the Sale, the time and place of the Auction, and the deadline for filing any objections. The Debtors believe that the

proposed notice procedures fully comply with Bankruptcy Rule 2002, and are reasonably calculated to provide timely and adequate notice of any Stalking Horse Agreement, the Sale, Bidding Procedures, Auction, and Sale Hearing to the Debtors' creditors and all other parties in interest that are entitled to notice, as well as those parties that have expressed a *bona fide* interest in acquiring the Assets.

41. The Sale conducted in accordance with the Bidding Procedures will generate significant value for the Debtors' estates and represents the best path forward for maximizing recoveries to the estates, the Debtors' creditors, and all parties in interest. The Debtors submit that ample business justification exists for the consummation of the Sale and, therefore, requests that this Court approve such Sale.

**C. The Sale of the Assets Free and Clear of all Encumbrances is Authorized Under Section 363(f) of the Bankruptcy Code**

42. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

43. Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests. *See In re Norrenberns Foods, Inc.*, 642 B.R. 825, 828–29 (Bankr.

S.D. Ill. 2022) (a debtor may sell property free and clear provided at least one of section 363(f)'s five conditions is satisfied); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same). The term "any interest" in section 363(f) is construed broadly. *See Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003).

44. The Debtors submit that, in the interest of attracting the best offers, it is appropriate to sell Assets on a final "as is" basis, free and clear of any and all encumbrances (except as otherwise expressly set forth in the Sale Order and any Stalking Horse Agreement, or a PSA with a Successful Bidder, as applicable) in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied with respect to such Sale.

45. Moreover, with respect to any other party asserting a lien, claim, or encumbrance against the Assets, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f) of the Bankruptcy Code. In particular, known lienholders, if any, will receive notice and will be given sufficient opportunity to object to the relief requested. Such lienholders that do not object to the Sale should be deemed to have consented. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285–86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *In re Norrenberns Foods, Inc.*, 642 B.R. 825, 829 (Bankr. S.D. Ill. 2022) (non-objecting lienholders may be deemed to consent under section 363(f)(2)). Consistent with the foregoing, the Bidding Procedures Order and the Sale Notice provide that the absence of a timely objection to the sale of

the Assets in accordance therewith shall be "consent" to such sale within the meaning of section 363(f)(2) of the Bankruptcy Code.

46. A sale of the Assets other than one free and clear of all interests would yield substantially less value for the Debtors' estates. The Debtors submit that Potential Bidders are unlikely to consummate the Sale absent the ability to purchase the Assets free and clear of all interests. Accordingly, the Debtors request that the Assets be sold free and clear with such interests attaching to the proceeds of the Sale, subject to any rights and defenses of the Debtors and other parties in interest with respect thereto.

**D. Any Sale Should be Subject to the Protections of Section 363(m) of the Bankruptcy Code**

47. Section 363(m) of the Bankruptcy Code provides, in part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. *See* 11 U.S.C. § 363(m). In approving a Sale free and clear of all interests and encumbrances, the Debtors request that the Court find and hold that all purchasers of Assets purchased in accordance with the Bidding Procedures are entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Such relief is appropriate in that selection of the Successful Bidder will be the result of a competitive bidding process and arm's-length, good-faith negotiations, and parties in interest will have the opportunity to review and object to a proposed transaction. *See Matter of Andy Frain Servs., Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986) (good-faith status turns on the integrity of the purchaser's conduct in the course of the sale and is destroyed only by fraud, collusion, or an attempt to take grossly unfair advantage of other bidders).

**E. The Assumption and Assignment of the Assumed Contracts in Connection With the Sale Satisfies Section 365 of the Bankruptcy Code**

48. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 COLLIER ON BANKRUPTCY ¶ 365.01[1] (15th ed. 1993)).

49. The standard applied to determine whether the assumption of a contract or an unexpired lease should be authorized is the "business judgment" standard. *See In re IYS Ventures, LLC*, 659 B.R. 308, 321 (Bankr. N.D. Ill. 2024) (courts apply a deferential "business judgment" test to a decision to assume or reject); *In re UAL Corp.*, 635 F.3d 312, 319 (7th Cir. 2011) (the court reviews the debtor's business judgment to determine whether assumption "would be beneficial or burdensome" by evaluating "whether assumption would serve the reorganization or whether it would take away funds available to other creditors"). As described above, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company.'" *Integrated Res., Inc.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d at 872).

50. The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See id.*; *see also Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a

debtor and a presumption of reasonableness attaches to a debtor's management decisions."). Generally, courts defer to a debtor in possession's business judgment to assume or reject an executory contract or lease. *See Matter of Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1172 (7th Cir. 1996) (section 365 "requires a court to consider whether assumption of the contract in question will further either the rehabilitation or liquidation of the bankruptcy estate"); *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Control Data Corp. v. Zelman (In re Minges)*, 602 F.2d 38, 42–43 (2d Cir. 1979); *In re Riodizio, Inc.*, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

51. Here, the Debtors have exercised their sound business judgment in determining that assumption and assignment of the Assumed Contracts is in the best interests of the Debtors and their estates, and, accordingly, the Court should approve the proposed assumption under section 365(a) of the Bankruptcy Code. *See, e.g.*, *In re IYS Ventures, LLC*, 659 B.R. 308, 321 (Bankr. N.D. Ill. 2024) (where a contract is a "good deal for the estate going forward," the court will defer to the debtor's business judgment); *Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

52. As set forth above, the Sale will provide significant benefits to the Debtors' estates. To that end, the assumption, assignment and sale of the Assumed Contracts is necessary for the Debtors to obtain the benefits of any PSA or Stalking Horse Agreement, as applicable. In addition, under section 365(k) of the Bankruptcy Code, the assignment by a debtor to an entity of a contract or lease "relieves the trustee and the estate from any liability for any breach of such

contract or lease occurring after such assignment." 11 U.S.C. § 365(k). Thus, following an assignment to the Successful Bidder of any Assumed Contract, the Debtors will be relieved from any liability for any subsequent breach associated therewith.

53. Furthermore, section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Assumed Contracts must be cured or that adequate assurance be provided that such defaults will be promptly cured. 11 U.S.C. § 365(b)(1). The Debtors propose to file with the Court, and serve on each Counterparty to an Assumed Contract, a Contract Notice that indicates the proposed Cure Amount for each such contract. As such, each Counterparty will have the opportunity to object to the proposed assumption and assignment to the Successful Bidder and to the proposed Cure Amount, if applicable. Moreover, the payment or reserve of the applicable Cure Amount, as provided for in the Bidding Procedures, will be a condition to the Debtors' assumption and assignment of any Assumed Contract.

54. Relatedly, section 365(f)(2)(B) of the Bankruptcy Code provides that a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2)(B). The words "adequate assurance of future performance" must be given a "practical, pragmatic construction" in light of the facts and circumstances of the proposed assumption. *See In re Resource Tech. Corp.*, 624 F.3d 376, 383 (7th Cir. 2010) ("adequate" as used in section 365(f)(2)(B) "is a term of art and simply means assurances that are commercially reasonable under the particular circumstances of the case," given "a practical, pragmatic construction"); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (finding that adequate assurance of future performance does not mean absolute assurance that debtor will thrive and profit); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill.

1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

55. Specifically, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (holding that adequate assurance of future performance is given where the assignee of lease has financial resources and expressed a willingness to devote sufficient funding to the business to ensure its success, and that in the leasing context, the chief determinant of adequate assurance is whether rent will be paid).

56. Here, a Successful Bidder will have provided adequate assurance of future performance with respect to any Assumed Contract. In order for its bid to be deemed a Qualifying Bid, each Qualifying Bidder will be required to provide evidence supporting its ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code (the "Adequate Assurance Information"), including: (a) the bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to such potential bidder; and (b) a contact person for the proposed assignee that the Counterparty may directly contact in connection with the adequate assurance of future performance. To the extent available, the Adequate Assurance Information may also include: (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee; and (y) financial statements, tax returns, annual reports or summaries thereof. Furthermore, given that the Debtors will submit evidence that all requirements for the assumption and assignment of such contracts at the Sale Hearing have been satisfied, the Court and other interested parties will have the opportunity to evaluate the ability of each Successful Bidder to provide adequate assurance of future performance.

57. Therefore, the Debtors respectfully request the Court (a) approve the proposed assumption and assignment of the Assumed Contracts, and (b) find that all anti-assignment provisions of such contracts are unenforceable under section 365(f) of the Bankruptcy Code.[5]

**WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h) AND 6006(d)**

58. Pursuant to Bankruptcy Rule 6004(h), "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). Furthermore, Bankruptcy Rule 6006(d) provides that "[u]nless the court orders otherwise, an order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6006(d). As set forth throughout this Motion, any delay in the Debtors' ability to consummate the Sale on the timeline contemplated by the Bidding Procedures would be detrimental to the Debtors, their creditors and estates.

59. For the reasons set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), to the extent applicable.

**NOTICE**

60. Notice of this Motion is being provided to: (a) the U.S. Trustee, Attn: Adam Brief adam.brief@usdoj.gov); (b) counsel to any statutory Committee; (c) counsel to the proposed

[5] Section 365(f)(1) provides that "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease . . ." 11 U.S.C. § 365(f)(1). Section 365(f)(3) further provides that "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

DIP Lender; (d) all parties known by the Debtors to assert a lien on any of the Assets, including the senior prepetition secured creditors; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. Notice of the Sale, through the Sale Notice, will be provided and published as set forth above in this Motion. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

61. No prior motion for the relief requested herein has been made to this or any other court.

## REQUEST TO EXCEED FIFTEEN-PAGE LIMIT

62. Local Rule 5005-2(D) sets forth a fifteen-page limit on all motions, subject to leave of the Court. Given the critical nature of the relief requested herein and the detailed procedures of which the Debtors seek approval that are set forth in this pleading, the Debtors hereby request leave of the Court to exceed the fifteen-page limit under Local Rule 5005-2(D) and respectfully submit that such relief is appropriate under the circumstances.

## CONCLUSION

WHEREFORE, the Debtors request entry of the Bidding Procedures Order and the Sale Order, granting the relief requested herein and such other and further relief as is just and proper.

*[Remainder of Page Left Intentionally Blank]*

Dated: September 28, 2026

**VEDDER PRICE, P.C.**

*/s/ Michael M. Eidelman*
Michael M. Eidelman (No. 6197788)
William W. Thorsness (No. 6290913)
Brooke H. Blackwell (No. 6329454)
222 N La Salle St., Suite 2600
Chicago, Illinois 60601
Telephone: (312) 609-7500
Facsimile: (312) 609-5005
Email: meidelman@vedder.com
wthorsness@vedder.com
bblackwell@vedder.com

*-and-*

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

Derek C. Abbott (No. 3376)
Matthew O. Talmo (No. 6333)
Tamara K. Mann (No. 5643)
Liam Davis (No. 7563)
Cicely Berzack (No. 7547)
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbott@morrisnichols.com
mtalmo@morrisnichols.com
tmann@morrisnichols.com
ldavis@morrisnichols.com
cberzack@morrisnichols.com

*Proposed Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

## Bidding Procedures Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| UPG ENTERPRISES LLC, *et al.*, | Case No. 26-15734 (DRF) |
| Debtors.[1] | Jointly Administered |

**ORDER (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES FOR THE SALE OF ANY AND ALL OR SUBSTANTIALLY ALL THE DEBTORS' ASSETS (II) SCHEDULING AN AUCTION AND SALE HEARING, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of (a) an order (this "Bidding Procedures Order"), (i) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures")[2] in connection with one or more sales or dispositions (collectively, the "Sale") of any and all or substantially all of the Debtors' assets (the "Assets"), (ii) establishing certain dates and deadlines for the sale process, including scheduling an auction of the Assets (the "Auction"), if necessary, in accordance with the Bidding Procedures, and the hearing with respect to the approval of the Sale (the "Sale Hearing"), (iii) approving the form and manner of notice of the Auction, if any, the Sale and the Sale Hearing, attached hereto as **Exhibit 2** (the "Sale Notice"),

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN are as follows: UPG Enterprises, LLC (4790); UP Investment Holdings LLC (8445); UPI LS LLC (6446); UPI MakUSA LLC (1401); UPG Metal Services LLC (8496); GenX Leasing Partners LLC (4464); UP Central Office LLC (0397); UP Equipment Holdings LLC (0431); Metalex LLC (6707); UPG Fabrication LLC (9021); National Metalwares Holdings LLC (2789); National Metalwares L.P. (9247); Sidecar NM LLC (4555); Chicago Steel Holdings LLC (0967); Douglass Logistics LLC (6025); Lexington Steel LLC (2209); Maksteel USA LLC (6796); Maksteel Transport LLC (9011); and UPG Flat Roll Group LLC (7515). The Debtors' mailing address is 1400 16th St., #250, Oak Brook, IL 60523.

[2] Capitalized terms not defined in this Order are defined in the Motion or Bidding Procedures, as applicable.

(iv) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale and approving the form and manner of notice thereof, attached hereto as **Exhibit 3** (the "Contract Notice"), (v) authorizing the Debtors in their discretion to select one or more Stalking Horse Bidders and enter into one or more Stalking Horse Agreements and, in connection with any Stalking Horse Agreement, provide the Bid Protections to the extent the Debtors determine that provision of such Bid Protections would be an actual and necessary cost of preserving the value of the Debtors' estates, and (vi) granting related relief; and (b) one or more orders (each, a "Sale Order"), as applicable, authorizing and approving: (i) the Sale of the Assets to a Stalking Horse Bidder or otherwise Successful Bidder(s), as applicable (the "Purchaser"), free and clear of all liens, claims, interests, and encumbrances to the extent set forth in the Stalking Horse Agreement or purchase and sale agreement(s) with the otherwise Successful Bidder(s), as applicable (the "PSA"), (ii) the assumption and assignment of the Assumed Contracts as set forth in the PSA, and (iii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the referral of bankruptcy matters under 28 U.S.C. § 157(a), Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois, and Local Rule 40.3.1 of that court; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing on the Motion (the "Bidding Procedures Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the

Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, CONCLUDED AND DETERMINED THAT**:[3]

A. Bidding Procedures. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Assets, as determined by the Debtors in an exercise of their business judgment.

B. Sale Notice. The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time, and place of the Sale Hearing; (iv) instructions for promptly obtaining a copy of any Stalking Horse Agreement; (v) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds subject to customary exceptions for permitted liens; and (vi) notice of the proposed assumption and assignment of the Assumed Contracts to the Successful Bidder(s) and the right, procedures, and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

C. Assumption and Assignment Procedures. The Contract Notice is reasonably calculated to provide counterparties to the Assumed Contracts (as defined below) with

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

proper notice of the potential assumption and assignment of their executory contracts, any Cure Amounts (as defined below) and the Assumption and Assignment Procedures (as defined below).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is granted to the extent set forth in this Bidding Procedures Order.

2. All objections to the Motion and the relief granted therein, to the extent not resolved as set forth herein or on the record at the Bidding Procedures Hearing, are hereby overruled.

**SALE TIMELINE**

3. The dates and deadlines below are approved but may also be modified by the Debtors to the extent permitted under the Bidding Procedures.

| Date | Deadline |
|---|---|
| **Within five (5) business days of entry of the Bidding Procedures Order** | Deadline to mail Sale Notice and Contract Notice |
| **October 21, 2026, at 4:00 p.m. (CT)** | Deadline to file and serve Notices of Stalking Horse Bidder |
| **October 28, 2026, at 4:00 p.m. (CT)** | Sale Objection Deadline and Contract Objection Deadline[4] |
| **October 28, 2026, at 4:00 p.m. (CT)** | Bid Deadline |
| **October 30, 2026, at 4:00 p.m. (CT)** | Deadline for Debtors to Designate Qualifying Bids |
| **November 2, 2026, at 9:00 a.m. (CT)** | Auction |

[4] The Sale Objection Deadline and Contract Objection Deadline apply to all objections to the sale of the Assets and the assumption and assignment of the Assumed Contracts (including adequate assurance of future performance by a Stalking Horse Bidder), with the exception of objections related to adequate assurance of future performance by a Successful Bidder other than a Stalking Horse Bidder.

| | |
|---|---|
| **As soon as practicable after completion of the Auction** | Deadline to file and serve Notice of Successful Bidder |
| **At the Sale Hearing** | Adequate Assurance Objection Deadline for Successful Bidder other than a Stalking Horse Bidder |
| **November 4, 2026, at 12:00 p.m. (CT), or noon one day before the Sale Hearing** | Debtors' Deadline to Reply to Sale Objections (other than Adequate Assurance Objections) |
| **November 5, 2026, at 10:00 a.m. (CT), or if the Court is not available, the earliest date when the Court may accommodate a sale hearing** | Sale Hearing |
| **No later than November 19, 2026** | Sale Closing |

4. Bid Deadline. **October 28, 2026, at 4:00 p.m. (CT)** shall be the deadline by which all Qualifying Bids (except a Stalking Horse Bid) must be **actually received** by the Debtors and their advisors.

5. Auction. The Auction, if any, shall be held **November 2, 2026, at 9:00 a.m. (CT)**. The Auction shall be held in accordance with the Bidding Procedures at the offices of proposed co-counsel to the Debtors: Vedder Price, P.C., 222 N. La Salle St., Chicago, IL 60601, or on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with the Consultation Parties. For the avoidance of doubt, the Debtors, after consulting with the Consultation Parties, may also conduct more than one Auction with respect to material portions of the Debtors' Assets. The Debtors shall send written notice of the date, time, and place of the Auction to the Qualifying Bidders no later than one (1) business day before such Auction, and will post notice of the date, time, and place of the Auction no later than one (1) business day before such Auction on the website of the Debtors' claims and noticing agent, Epiq, https://dm.epiq11.com/UPG.

6. Sale Objection Deadline. Any and all objections to a Sale of the Assets and entry of a Sale Order must (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Code, Bankruptcy Rules, the Local Rules and all orders of the Court entered in these chapter 11 cases, (iii) be filed with the Court no later than **October 28, 2026, at 4:00 p.m. (CT)** (the "Sale Objection Deadline"), and (iv) be served on the following parties (collectively, the "Objection Notice Parties"): (a) proposed counsel to the Debtors: Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Derek C. Abbott (dabbott@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); Tamara K. Mann (tmann@morrisnichols.com); Liam Davis (ldavis@morrisnichols.com); and Cicely Berzack (cberzack@morrisnichols.com) (b) proposed co-counsel to the Debtors: Vedder Price, P.C., 222 N. La Salle St., Chicago, Illinois 60601, Attn: Michael M. Eidelman (meidelman@vedder.com) and William W. Thorsness (wthorsness@vedder.com); (c) counsel to any Official Committee of Unsecured Creditors; (d) the Office of the United States Trustee (the "U.S. Trustee") for Region 11, 219 South Dearborn, Room 873, Chicago, IL 60604, Attn: Adam Brief (adam.brief@usdoj.gov); (e) counsel to the Proposed DIP Lender, DLA Piper LLP (US), 444 West Lake Street, Suite 900, Chicago, IL 60606 (Attn: John Lyons (john.lyons@us.dlapiper.com) and Gregory Juell (gregory.juell@us.dlapiper.com)); (f) counsel to White Oak Commercial Finance, LLC, as prepetition secured agent and lender, Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, IL 60603 (Attn: Dimitri G. Karcazes (Dimitri.Karacazes@goldbergkohn.com) and Eva D. Gadzheva (Eva.Gadzheva@goldbergkohn.com)); (g) counsel to the Wintrust Lenders, Seyfarth Shaw LLP, 233 S. Wacker Drive, Suite 8000, Chicago, IL 60606 (Attn: Nicholas R. Marcus (nmarcus@seyfarth.com) and Gus Paloian (gpaloian@seyfarth.com); and (h) any Stalking Horse

Bidders. Any party or entity that fails to timely make an objection to the Sale on or before the Sale Objection Deadline (a) shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances, and other interests, and (c) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

7. Sale Hearing. The Sale Hearing to approve the Sale of the Assets shall be held on **November 5, 2026, at 10:00 a.m. (CT)**; *provided, however*, after consultation with the Consultation Parties, that the Sale Hearing may be continued by the Debtors from time to time.

8. The dates and deadlines set forth in this Bidding Procedures Order are subject to modification by the Debtors, after consultation with the Consultation Parties, in accordance with the Bidding Procedures.

**BIDDING PROCEDURES**

9. Bidding Procedures. The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Bidding Procedures Order. The Debtors are authorized to take any and all reasonable actions necessary to implement the Bidding Procedures.

10. Pursuant to the Bidding Procedures and this Bidding Procedures Order, the Debtors are authorized, but not directed, after consultation with the Consultation Parties, to select one or more additional bidders to act as a Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder.

11. To the extent the Debtors, after consultation with the Consultation Parties, determine to offer Bid Protections to any additional Stalking Horse Bidder, the Debtors shall disclose such Bid Protections in any corresponding notice designating a Stalking Horse Bidders (the "Notice of Stalking Horse Bidder") to be filed on or before **October 21, 2026, at 4:00 p.m. (CT)**. Each Notice of Stalking Horse Bidder, if any, shall also include a copy of the applicable Stalking Horse Bidders' Stalking Horse Agreement(s). An appropriate declaration in support of the proposed Bid Protections (the "Bid Protections Declaration") and a proposed form of order approving of the Bid Protections (the "Bid Protections Order") shall be attached to the Notice of Stalking Horse Bidder. Any objection to (i) the Bid Protections set forth in the Notice of Stalking Horse Bidder and Bid Protections Declaration or (ii) the form of the Bid Protections Order (a "Bid Protections Objection"), shall be filed **no later than 4:00 p.m. (CT) five business days after the filing of the Notice of Stalking Horse Bidder**. The Notice of Stalking Horse Bidder and Bid Protections Declaration shall set forth the reasons the Debtors believe the Bid Protections satisfy the requirements of section 503(b) of the Bankruptcy Code. If a timely Bid Protections Objection is filed, the Debtors will schedule a hearing in consultation with any objecting parties, the Consultation Parties, and the Court, subject to the Court's availability. Absent any timely Bid Protections Objection, the Court may enter the Bid Protections Order without further hearing.

12. Notwithstanding the foregoing, the Debtors may designate the following parties as Stalking Horse Bidders and offer the following Bid Protections, each on the terms set forth in their respective Stalking Horse Agreements, and enter into the Stalking Horse Agreements, subject to higher and better offers in accordance with the Bidding Procedures and this Bidding Procedures Order:

| **Stalking Horse Bidder** | **Assets** | **Purchase Price** | **Bid Protections** |
|---|---|---|---|
| Bidder 1 | Assets of Maksteel Wyoming | $5,300,000 | Break-up fee of $150,000 |
| Bidder 2 | Substantially all assets of Chicago Steel and Lexington Steel (excluding accounts receivable) | $4,000,000, plus book value of inventory | Break-up fee of 3% |
| Bidder 3 | Assets of Metalex, LLC, located at the Debtors' Libertyville, Illinois Facility and certain assets located at the San Luis Potosí, Mexico Facility | $5,000,000 | Break-up fee of 3%; Expense Reimbursement up to $300,000 |

13. Each Stalking Horse Bidder designated in accordance with this Bidding Procedures Order is a Qualifying Bidder and the bid reflected in the Stalking Horse Bid (including as may be increased at the Auction (if any)) is a Qualifying Bid, as set forth in the Bidding Procedures.

14. Any Qualifying Bidder that has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor"), unless the Court for cause orders otherwise, shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code, including at the Auction; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral over which such Secured Creditor has a valid and perfected lien; and provided further that any credit bid by a Secured Creditor shall contain a cash component sufficient to repay in full in cash secured claims of a senior Secured Creditor, if any (unless such senior Secured Creditor agrees to a different treatment), and any transaction fee for the Debtors' investment banker(s). Any Secured

Creditor shall be a Qualifying Bidder with respect to Assets subject to valid and perfected liens of such Secured Creditor notwithstanding anything to the contrary in the Bidding Procedures.

15. In connection with a Bid contemplating a Sale, no person or entity other than a Stalking Horse Bidder, shall be entitled solely in such person's capacity as a Bidder, to any expense reimbursement, break-up fees, "topping", termination, or other similar fee or payment, and by submitting such a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature solely in connection with such bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise; provided that, for the further avoidance of doubt, nothing herein shall limit any rights of any person in any capacity other than as a Bidder.

16. Subject to the terms of the Bidding Procedures, in the event of a competing Qualifying Bid, the Stalking Horse Bidder (if any) for such Assets will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to credit bid its claims for Bid Protections.

**NOTICE OF THE AUCTION, SALE AND SALE HEARING**

17. The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved. No later than five (5) business days after entry of this Bidding Procedures Order, the Debtors will cause the Sale Notice to be served on the following parties or their respective counsel, if known (collectively, the "Sale Notice Parties"): (i) the Office of the U.S. Trustee for the Northern District of Illinois (Region 11); (ii) counsel to any statutory Committee; (iii) all parties known by the Debtors to assert a lien on any of the Assets, including the senior prepetition secured creditors; (iv) all persons known or reasonably believed to have asserted an interest in any of the Assets; (v) all persons known or reasonably believed to have expressed an interest in acquiring Assets; (vi) the Office of the United States Attorney for the Northern District of Illinois;

(vii) the Office of the Attorney General in each state in which the Debtors operate; (viii) the Office of the Secretary of State in each state in which the Debtors have operated; (ix) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (x) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (xi) the Federal Trade Commission; (xii) the United States Attorney General/Antitrust Division of Department of Justice; (xiii) all non-Debtor parties to any of the Assumed Contracts; (xiv) all of the Debtors' other known creditors and equity security holders; and (xv) all parties that have filed a notice of appearance and demand for service of papers in the chapter 11 cases as of the service date.

18. In addition, as soon as practicable, after entry of this Bidding Procedures Order, the Debtors will publish the Sale Notice, with any modification necessary for ease of publication, once in the national edition of a newspaper with national circulation to provide notice to any other potential interested parties.

**THE ASSUMPTION AND ASSIGNMENT PROCEDURES**

19. The procedures set forth below regarding the assumption and assignment of the executory contracts that may be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to a Stalking Horse Bidder or otherwise Successful Bidder(s), as applicable, pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale (the "Assumption and Assignment Procedures") are hereby approved to the extent set forth herein.

20. These Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale, subject to the payment of any amounts necessary to cure any defaults arising under any Assigned Contract (the "Cure Amount"):

(a) Within five (5) business days following entry of the Bidding Procedures Order (the "Contract Notice Deadline"), the Debtors shall file with the Court and serve on each counterparty to an Assumed Contract (each, a "Counterparty," and collectively, the "Counterparties") the Contract Notice. If the Debtors identify additional Assumed Contracts that might be assumed by the Debtors and assigned to a Successful Bidder, the Debtors will promptly file with the Court and send a supplemental Contract Notice (a "Supplemental Contract Notice") to the applicable counterparties to each such Assumed Contract.

(b) The Contract Notice (including any Supplemental Contract Notice) shall include, without limitation, the cure amount (each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assumed Contracts. If a Counterparty objects to (i) the assumption and assignment of the Counterparty's Assumed Contract, (ii) the Cure Amount for its Assumed Contract or (iii) the provision of adequate assurance of future performance, the Counterparty must file with the Court and serve on the Objection Notice Parties a written objection (a "Contract Objection").

(c) Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, the Local Rules and all orders of the Court entered in these chapter 11 cases; (iii) state the basis for such objection; (iv) if such objection is to the Cure Amount, state with specificity what Cure Amount the Counterparty believes is required (in all cases, with appropriate documentation in support thereof); and (v) be filed with the Court and served on the Objection Notice Parties by no later than **October 28, 2026, at 4:00 p.m. (CT)** (the "Contract Objection Deadline"); provided, that counterparties to Assumed Contracts identified on a Supplemental Contract Notice filed less than seven (7) days prior to the Contract Objection Deadline shall have seven (7) days from the service of such Supplemental Contract Notice to object to the proposed assumption and assignment of such Assumed Contracts.

Any objections to adequate assurance of performance by a Stalking Horse Bidder shall be filed by the Contract Objection Deadline. Any objections solely related to the adequate assurance of future performance by a Successful Bidder(s) (other than the Stalking Horse Bidder) shall be **at the Sale Hearing** (the "Adequate Assurance Objection Deadline").

(d) As soon as reasonably practicable after the completion of the Auction, or to the extent an Auction is not necessary, then after the Debtors' determination of the Qualifying Bids (in consultation with the Consultation Parties), the Debtors shall file with the Court one or more notices identifying each Successful Bidder (a "Notice of Successful Bidder"), which shall set forth, among other things, the Successful Bidder and Backup Bidder (if any). For the avoidance of doubt, if the Debtors do not timely receive any Qualifying Bids for particular Assets other than a Stalking Horse Bid, the Stalking Horse Bidder shall be deemed the Successful Bidder.

(e) As soon as reasonably practicable after the completion of the Auction or, to the extent an Auction was not necessary, after the Debtors' determination of the Qualifying Bids (in consultation with the Consultation Parties), the Debtors will cause to be served

by overnight mail upon each affected Counterparty and its counsel (if known) the Notice of Successful Bidder.

(f) At the Sale Hearing, the Debtors will seek Court approval of their assumption and assignment to the Successful Bidder of only those Assumed Contracts that have been selected by the Successful Bidder to be assumed and assigned (the "Selected Assumed Contracts"). The Debtors and their estates reserve any and all rights with respect to any Assumed Contracts that are not ultimately designated as Selected Assumed Contracts.

(g) If no Contract Objection is timely received with respect to a Selected Assumed Contract: (i) the Counterparty to such Selected Assumed Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the Selected Assumed Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Selected Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assumed Contract against the Debtors and their estates or the Successful Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

(h) To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors; *provided*, *however*, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assumed Contract may be assumed by the Debtors and assigned to the Successful Bidder provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the Successful Bidder, pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

(i) Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order additional executory contracts or unexpired leases of the Debtors are determined to be executory contracts or unexpired leases that the Successful Bidder seeks to assume and assign, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by overnight delivery, on the Counterparties a Contract Notice, and such Counterparties shall file any Contract Objections no later than seven (7) days thereafter; *provided*, *however*, any such Contract Objections shall be solely with respect to the proposed cure amount contained therein and only to the extent such objection could not have been raised prior to the Contract Objection Deadline. If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Assumed Contracts to the Successful Bidder without further notice to

creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order.

21. The Debtors' decision to assume and assign Assumed Contracts to a Successful Bidder is subject to this Court's approval and the closing of the Sale. Accordingly, absent this Court's approval and the closing of the Sale, the Assumed Contracts shall not be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these chapter 11 cases.

22. The inclusion of a contract, lease or other agreement on a Contract Notice shall not constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto shall be preserved.

**RELATED RELIEF**

23. Notwithstanding anything to the contrary contained herein or in the Bidding Procedures, (a) the right of parties to credit bid is subject to the provisions of section 363(k) of the Bankruptcy Code, (b) nothing in this Bidding Procedures Order shall be construed as a waiver of, or a finding that a credit bid component of a Qualifying Bid satisfies the requirements of, section 363(k) of the Bankruptcy Code, and (c) nothing in this Bidding Procedures Order shall prejudice any party in interest's rights to object to the credit bid component of the Stalking Horse Bid on any basis, or any other party's right to oppose such objection.

24. All rights of the Debtors, as they may reasonably determine to be in the best interest of their estates, in consultation with the Consultation Parties, to modify the Bidding Procedures in good faith, to further the goal of attaining the highest or otherwise best offer for the

Assets, or impose, at or prior to selection of the Successful Bidder(s), additional customary terms and conditions on the Sale of the Assets, are reserved. The Debtors shall provide reasonable notice under the circumstances of any such modification to any Qualifying Bidder, including any Stalking Horse Bidder.

25. The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

26. The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bidding Procedures Order shall not diminish or impair the effectiveness or enforceability of such a provision.

27. Nothing in this Bidding Procedures Order or the Bidding Procedures shall require the board of directors, managers, or such similar governing body of a Debtor or any of its Debtor or Non-Debtor Affiliates to take any action, or to refrain from taking any action, with respect to the Bidding Procedures, to the extent such board of directors, managers, or such similar governing body reasonably determines in good faith, after consultation with their counsel, that taking such action, or refraining from taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

28. In the event of any inconsistencies between this Bidding Procedures Order and the Motion, this Bidding Procedures Order shall govern in all respects. In the event of any inconsistencies between this Bidding Procedures Order and the Bidding Procedures, the Bidding Procedures Order shall govern in all respects.

29. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 6006(d), 7052, or 9014, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

30. The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Bidding Procedures Order in accordance with the Motion

31. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Bidding Procedures, a Stalking Horse Agreement (or PSA with the otherwise Successful Bidder(s)), and the implementation of this Bidding Procedures Order.

________________________________

United States Bankruptcy Judge

**Exhibit 1**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| UPG ENTERPRISES LLC, *et al.*, | Case No. 26-15734 (DRF) |
| Debtors.[1] | Jointly Administered |

**BIDDING PROCEDURES**

On September 22 and 23, 2026, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are maintaining their business and managing their property as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

The United States Bankruptcy Court for the Northern District of Illinois (the "Court") entered an order (the "Bidding Procedures Order"),[2] which, among other things, authorized the Debtors to solicit bids in accordance with the procedures outlined herein (the "Bidding Procedures") for one or more sales or dispositions (collectively, the "Sale") of any and all or substantially all of the Debtors' assets (the "Assets") or subgroups thereof.

The Bidding Procedures set forth the process by which the Debtors are authorized to solicit the highest or otherwise best bid for one or more sales of the Debtors' Assets culminating in an auction (the "Auction") if competing Qualifying Bids (as defined below) are received.

**ANY PARTY INTERESTED IN BIDDING SHOULD CONTACT THE DEBTORS' INVESTMENT BANKER, SC&H GROUP, INC. (HANK WAIDA (hwaida@schgroup.com)).**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN are as follows: UPG Enterprises, LLC (4790); UP Investment Holdings LLC (8445); UPI LS LLC (6446); UPI MakUSA LLC (1401); UPG Metal Services LLC (8496); GenX Leasing Partners LLC (4464); UP Central Office LLC (0397); UP Equipment Holdings LLC (0431); Metalex LLC (6707); UPG Fabrication LLC (9021); National Metalwares Holdings LLC (2789); National Metalwares L.P. (9247); Sidecar NM LLC (4555); Chicago Steel Holdings LLC (0967); Douglass Logistics LLC (6025); Lexington Steel LLC (2209); Maksteel USA LLC (6796); Maksteel Transport LLC (9011); and UPG Flat Roll Group LLC (7515). The Debtors' mailing address is 1400 16th St., #250, Oak Brook, IL 60523.

[2] Capitalized terms not defined herein are defined in the Bidding Procedures Order.

***Summary of Important Dates and Deadlines***

| Date | Deadline |
|---|---|
| **Within five (5) business days of entry of the Bidding Procedures Order** | Deadline to mail Sale Notice and Contract Notice |
| **October 21, 2026, at 4:00 p.m. (CT)** | Deadline to file and serve Notices of Stalking Horse Bidder |
| **October 28, 2026, at 4:00 p.m. (CT)** | Sale Objection Deadline and Contract Objection Deadline[3] |
| **October 28, 2026, at 4:00 p.m. (CT)** | Bid Deadline |
| **October 30, 2026, at 4:00 p.m. (CT)** | Deadline for Debtors to Designate Qualifying Bids |
| **November 2, 2026, at 9:00 a.m. (CT)** | Auction |
| **As soon as practicable after completion of the Auction** | Deadline to file and serve Notice of Successful Bidder |
| **At the Sale Hearing** | Adequate Assurance Objection Deadline for Successful Bidder other than a Stalking Horse Bidder |
| **November 4, 2026, at 12:00 p.m. (CT), or noon one day before the Sale Hearing** | Debtors' Deadline to Reply to Sale Objections (other than Adequate Assurance Objections) |
| **November 5, 2026, at 10:00 a.m. (CT), or if the Court is not available, the earliest date when the Court may accommodate a sale hearing** | Sale Hearing |
| **No later than November 19, 2026** | Sale Closing |

[3] The Sale Objection Deadline and Contract Objection Deadline apply to all objections to the sale of the Assets and the assumption and assignment of the Assumed Contracts (including adequate assurance of future performance by a Stalking Horse Bidder), with the exception of objections related to adequate assurance of future performance by a Successful Bidder other than a Stalking Horse Bidder.

**1. Form of Purchase and Sale Agreement**

The Debtors have drafted a form of Purchase and Sale Agreement (together with all ancillary documents and agreements, the "PSA") for parties interested in acquiring Assets. The Debtors intend to provide copies of the form of PSA to all Potential Bidders and will also make such form of PSA available in the confidential electronic data room concerning the Assets, established by the Debtors in connection with their marketing process (the "Data Room"). Pursuant to the form of PSA, the Successful Bidder shall acquire the Assets purchased thereby free and clear of any and all interests to the maximum extent permitted by section 363 of the Bankruptcy Code subject to certain other conditions, with such interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such interests applied against the Assets.

**2. Participation Requirements**

Any person or entity that wishes to participate in the bidding process (each, a "Potential Bidder") must first become a "Qualifying Bidder" in the reasonable discretion of the Debtors after consultation with the Consultation Parties (as defined below). In order to become a Qualifying Bidder and thus be able to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "Data Room"), a Potential Bidder must submit to the Debtors and their advisors (unless waived by the Debtors) an executed nondisclosure or confidentiality agreement in form and substance reasonably satisfactory to the Debtors.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) any Stalking Horse Bidder is a Qualifying Bidder, and any Stalking Horse Agreement is a Qualifying Bid (as defined below); and (ii) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

**3. Bankruptcy Court Jurisdiction**

Any Potential Bidders and each Qualifying Bidder submitting a bid shall be deemed to: (a) have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to its bid, the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders (as defined below); (b) have agreed to bring any such action or proceeding in the Court; and (c) have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

4. **Due Diligence**

The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to: (a) the Debtors' Investment Banker, SC&H Group, Inc. (Hank Waida (hwaida@schgroup.com); and/or (b) Derek C. Abbott (dabbott@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); Tamara K. Mann (tmann@morrisnichols.com); Liam Davis (ldavis@morrisnichols.com); and Cicely Berzack (cberzack@morrisnichols.com) and Michael M. Eidelman (meidelman@vedder.com) and William W. Thorsness (wthorsness@vedder.com). The due diligence period shall extend through and including the Bid Deadline. The Debtors may, but shall not be obligated to, in their sole discretion, furnish any due diligence information after the Bid Deadline. The Debtors reserve the right, in their reasonable discretion and after consultation with the Consultation Parties, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder. Notwithstanding any prepetition limitations, including, without limitation, any nondisclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and the Sale.

5. **Bid Requirements**

Other than in the case of any Stalking Horse Bid, to be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements (each, a "Bid Requirement"):

(a) be in writing;

(b) fully disclose the identity of the Qualifying Bidder and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

(c) set forth the purchase price to be paid by such Qualifying Bidder, which in all events must exceed the amount of any Stalking Horse Bid for the applicable Assets by at least $100,000, unless otherwise required by a Stalking Horse Agreement, plus the amount of any Bid Protections;

(d) not propose payment in any form other than cash (except as otherwise expressly set forth in the Bidding Procedures);

(e) state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(f) specify the Assets that are included in the bid and, to the extent the Debtors file a Notice of Stalking Horse Bidder, state that such Qualifying Bidder offers to (i) purchase the Assets, or a number or combination of the Assets, and (ii) assume

liabilities upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse Agreement(s)

(g) be accompanied by a PSA marked to reflect any variations from the Stalking Horse Agreement(s), if applicable;

(h) state that such Qualifying Bidder's offer is formal, binding, unconditional, and irrevocable until five (5) business days after the closing of the Sale for the applicable Assets;

(i) state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the PSA and provide written evidence in support thereof;

(j) contain such financial and other information to allow the Debtors to make a reasonable determination, after consultation with the Consultation Parties, as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the PSA, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B), including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve such information on any counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale. The Debtors shall provide all such financial information and adequate assurance documentation to the senior prepetition secured creditors that are Consultation Parties and hold a lien in the assets subject to such bid, subject to appropriate confidentiality protections;

(k) identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the transactions contemplated by the PSA;

(l) a commitment to close the transactions contemplated by the PSA by no later than November 19, 2026;

(m) not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

(n) not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

(o) contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures;

(p) sets forth (i) a statement or evidence that the Qualifying Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings, and (ii) any regulatory and third-party approval, including any CFIUS approval, required for the Qualifying Bidder to close the transactions contemplated by the PSA, and the time period within which the Qualifying Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such Qualifying Bidder's PSA, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); provided that a Qualifying Bidder agrees that its legal counsel will coordinate in good faith with Debtors' and Consultation Parties' legal counsel to discuss and explain Qualifying Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the PSA; provided, further that the offer contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

(q) provides for the Qualifying Bidder to serve as a backup bidder (the "<u>Backup Bidder</u>") if the Qualifying Bidder's bid is selected as such by the Debtors in consultation with the Consultation Parties (the "<u>Backup Bid</u>");

(r) includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the PSA;

(s) provides a good faith cash deposit (the "<u>Deposit</u>") in an amount equal to ten percent (10%) of the purchase price provided for in the PSA (or such additional amount as may be determined by the Debtors in their reasonable discretion and after consultation with the Consultation Parties), provided, however, that if a Qualifying Bidder becomes a Successful Bidder or a Backup Bidder, they must increase the Deposit to ten percent (10%) of the new purchase price within one (1) business day after the Auction; and

(t) provides that the Deposit shall be forfeited to the Debtors in the event of the Qualifying Bidder's breach of, or failure to perform under, the PSA, without prejudice to any and all other rights and remedies of the Debtors. Any forfeited Deposit shall constitute proceeds of the Assets subject to the bid and shall be subject to the applicable liens and security interests of secured creditors (and any adequate protection liens and claims granted by the Court to secured creditors) with the same validity, extent and priority as such liens applied against the Assets.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors reserve the right to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

**6. Stalking Horse Bidders and Bid Protections**

The Debtors shall be authorized, but not obligated, in an exercise of their business judgment and in consultation with the Consultation Parties, to select one or more Qualifying Bidders to act as stalking horse bidders in connection with the Sale (each, a "Stalking Horse Bidder"), and enter into a purchase agreement, in form and substance acceptable to the Stalking Horse Bidder, subject to higher or otherwise better offers at the Auction, with respect to a Sale with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"). To induce a bidder (other than an insider) to serve as a Stalking Horse Bidder, the Debtors shall be authorized, in consultation with the Consultation Parties, to offer a break-up fee, not to exceed 3% of the purchase price, and reimbursement of reasonable and documented expenses (together, the "Bid Protections"). To the extent the Debtors, after consultation with the Consultation Parties, determines to designate one or more Stalking Horse Bidders, the Debtors shall file a notice of designation of such Stalking Horse Bidder(s) and disclose any Bid Protections (the "Notice of Stalking Horse Bidder") on or before **October 21, 2026, at 4:00 p.m. (CT)**. Each Stalking Horse Bidder Notice, if any, shall also include a copy of the applicable Stalking Horse Bidders' Stalking Horse Agreement(s).

**7. Bid Deadline; Stalking Horse Bid Deadline**

A Potential Bidder, other than any Stalking Horse Bidder, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Bidding Procedures Notice Parties (as defined in the Bidding Procedures) and the Consultation Parties so as to be received **on or before October 28, 2026 at 4:00 p.m. (CT) (the "Bid Deadline")**; provided that the Debtors may extend the Bid Deadline without further order of the Court, after consultation with the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these chapter 11 cases indicating the same. **Any party that does not submit a bid by the Bid Deadline may not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.**

**8. Evaluation of Qualifying Bids**

The Debtors will deliver, within one (1) day after receipt thereof, copies of all bids from Potential Bidders to the Consultation Parties. The Debtors, after consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid. Prior to the start of the Auction, the Debtors shall: (i) notify all Potential Bidders whether their bids have been determined to be a Qualifying Bid; and (ii) determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid for purposes of constituting the opening bid of the Auction (the "Baseline Bid" and the Qualifying Bidder submitting the Baseline Bid, the "Baseline Bidder").

**9. No Qualifying Bids**

If no Qualifying Bids for any or substantially all Assets other than a Stalking Horse Bid are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that the Court approve the Debtors entry into and performance under the relevant Stalking Horse Agreement(s) and the transactions contemplated thereunder.

**10. Right to Credit Bid**

Any creditor that has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall be deemed to be a Qualified Bidder with respect to such assets, notwithstanding anything to the contrary in these Bidding Procedures, and shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code (a "Credit Bid"), including at the Auction; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; and provided further that any credit bid by a Secured Creditor shall contain a cash component sufficient to repay in full the secured claims of a senior Secured Creditor, if any (unless such senior Secured Creditor agrees to a different treatment), and any transaction fee of the Debtors' investment bankers.

**11. Auction**

If the Debtors receive one or more timely Qualifying Bids other than a Stalking Horse Bid for particular Assets, then the Debtors shall conduct the Auction. For the avoidance of doubt, if there are timely Qualifying Bids submitted other than a Stalking Horse Bid, the Stalking Horse Bidder will participate in the Auction. Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bids are Successful Bids or Backup Bids (each as defined below), as applicable, which will be determined by considering, among other things, the following non-binding and non-exclusive factors: (a) the number, type and nature of any changes to the Stalking Horse Agreement(s), if applicable, and, if not applicable, the PSA; (b) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors and their estates of such modifications or delay; (c) the total consideration to be received by the Debtors and their estates; (d) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (e) the net benefit to the Debtors' estates; (f) the assumption of executory contracts and unexpired leases; and (g) any other factors the Debtors may reasonably deem relevant.

The Auction shall be governed by the following procedures:

i. the Auction shall be held on **November 2, 2026, at 9:00 a.m. (CT)** at the offices of Vedder Price, P.C., 222 N. La Salle St., Chicago, Illinois 60601, or on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with the Consultation Parties;

ii. only the Qualifying Bidders with Qualifying Bids (the "Auction Bidders"), shall be entitled to make any subsequent bids at the Auction;

iii. each Auction Bidder must attend the Auction, either on its own behalf or through a duly authorized representative with power to bind such Auction Bidder at the Auction; *provided*, that the Debtors may permit, in consultation with the Consultation Parties, Auction Bidders to attend remotely;

iv. only the Debtors, the Auction Bidders, and the Consultation Parties, together with the professional advisors to each of the foregoing parties, may attend the Auction absent the express written consent of the Debtors, in consultation with the Consultation Parties;

v. the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

vi. the Auction Bidders shall confirm on the record that they have not engaged in any collusion with respect to their bid, the Bidding Procedures, the Auction or the Sale;

vii. bidding shall commence at the amount of the Baseline Bid, and subsequently continue in minimum increments in an amount to be determined by the Debtors in consultation with the Consultation Parties (each, an "Overbid"), provided that: (i) each Overbid must be a Qualifying Bid; and (ii) the Debtors, in consultation with the Consultation Parties, shall retain the right to modify the bid increment requirements at the Auction or to require other modifications of the particular bidding format, including without limitation, separate rounds of bulk and/or lot bidding, sealed bidding, open outcry, or any other form of bid submission (including in connection with any bulk or lot bidding);

viii. any Overbid must remain open and binding on the Qualifying Bidder until five business days following the closing of the Sale;

ix. the Auction may include separate discussions or negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all Auction Bidders;

x. the Auction Bidders may not speak with other Auction Bidders absent authority from the Debtors;

xi. all material terms of the bid that is deemed to be the highest or otherwise best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have

regarding the Debtors' announcement of the then-current highest and best bid;

xii. the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional or modified procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids or the bidding format, including without limitation, separate rounds of bulk and/or lot bidding, sealed bidding, open outcry, or any other form of bid submission (including in connection with any bulk or lot building)) for conducting the Auction, provided that such rules are (i) not materially inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court entered in connection with these chapter 11 cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

xiii. each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

xiv. the Auction Bidders shall have the right to make additional modifications to their respective PSA for purposes of making an Overbid;

xv. the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the PSA as may be amended during the Auction and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

xvi. upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, subject to Court

approval, the offer or offers for the Assets that is or are the highest or otherwise best from among the Qualifying Bids submitted at the Auction (the "Successful Bid(s)"). In making this decision, the Debtors may consider, in consultation with the Consultation Parties, among other things, the amount of the purchase price, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Stalking Horse Agreement(s) or PSA, as applicable, and the net benefit to the Debtors' estates. The bidder(s) submitting such Successful Bid(s) shall become the "Successful Bidder(s)," and shall have such rights and responsibilities of the purchaser as set forth in the applicable agreement(s). The Debtors may, in their sole discretion, after consultation with the Consultation Parties, designate one or more Backup Bids (and the corresponding Backup Bidder(s)) to acquire the Assets in the event that the Successful Bidder(s) does not close the Sale(s); and

xvii. prior to the Sale Hearing, the Successful Bidder(s) shall complete all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made;

xviii. prior to the Sale Hearing, the Successful Bidder(s) and Backup Bidder(s) shall increase their respective Deposits to ten percent (10%) of the new purchase price within one (1) business day after the Auction unless the Debtors agree otherwise in consultation with the Consultation Parties.

**THE SUCCESSFUL BID(S) AND ANY BACKUP BID(S) SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER(S) AND THE BACKUP BIDDER(S), RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL FIVE (5) BUSINESS DAYS AFTER THE SALE HAS CLOSED.**

**12. Sale Hearing**

The Successful Bid(s) and any Backup Bid(s) (or if no Qualifying Bid other than a Stalking Horse Bid is received, then the Stalking Horse Bid(s) as the Successful Bid) will be subject to approval by the Court. If the Successful Bid was for a Sale, a hearing to approve the Successful Bid(s) and any Backup Bid(s) for the Sale of the Debtors' Assets shall take place on **November 5, 2026, at 10 a.m. (CT)**. After consultation with the Consultation Parties, the Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of these chapter 11 cases.

**13. Backup Bidder**

If the Successful Bid was for a Sale, and notwithstanding any of the foregoing, in the event that the Successful Bidder(s) fails to close the Sale prior to **November 19, 2026** (or such date as may be extended by the Debtors, in consultation with the Consultation Parties), after consultation with the Consultation Parties, the Backup Bid will be deemed to be the Successful Bid, the Backup Bidder will be deemed to be the Successful Bidder, and the Debtors shall be authorized, but not directed, to close a Sale to the Backup Bidder subject to the terms of the Backup Bid without the need for further order of the Court and without the need for further notice to any interested parties; provided, however, that the Debtors shall provide at least one (1) business day prior written notice to the senior prepetition secured creditor that has a lien on any of the Assets that are being sold before closing on the Backup Bid, and shall not close on the Backup Bid over the timely written objection of such secured creditor without further order of the Court.

**14. Return of Deposits**

All Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Backup Bidder no later than five (5) business days following the closing of the Auction. For the avoidance of doubt, the Debtors' retention of a Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Successful Bidder's or Backup Bidder's breach or failure to close and all such rights and remedies are preserved.

**15. Notice and Consultation Parties**

(a) The term "Bidding Procedures Notice Parties" as used in these Bidding Procedures shall mean: (i) proposed counsel to the Debtors, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Derek C. Abbott (dabbott@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); Tamara K. Mann (tmann@morrisnichols.com); Liam Davis (ldavis@morrisnichols.com); and Cicely Berzack (cberzack@morrisnichols.com); (ii) ; and proposed co-counsel to the Debtors, Vedder Price, P.C., 222 N. La Salle St., Chicago, Illinois 60601, Attn: Michael M. Eidelman (meidelman@vedder.com) and William W. Thorsness (wthorsness@vedder.com); (iii) investment banking advisors to the Debtors, SC&H (Hank Waida (hwaida@schgroup.com).

(b) The term "Consultation Parties" as used in these Bidding Procedures shall mean: (i) counsel to the Proposed DIP Lenders; (ii) counsel to any Official Committee of Unsecured Creditors; and (iii) each of Wintrust and White Oak, each as a prepetition secured agent for certain lenders and a lender, but only with respect to Assets that are subject to the liens of the respective prepetition secured agent and lenders.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable

business judgment. Nothing in this paragraph shall limit, modify, or otherwise waive the Debtors' fiduciary duties obligations to their creditors.

In the event that any Consultation Party or any member of the Committee or an affiliate of any of the foregoing actually submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party regarding Qualifying Bids submitted by other parties and/or the selection of a Successful Bidder and Backup Bidder established under these Bidding Procedures will be waived without further action; provided that the bidding party will have the same rights as any other Qualifying Bidder set forth above. To the extent any such Consultation Party that has submitted a Qualifying Bid ceases to participate in the sale process or Auction for any reason, their full consultation rights provided for herein shall be immediately restored without further action.

If a member of the Committee submits a Qualifying Bid, the Committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that the Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any information regarding the sale of the Assets to such member.

**16. <u>Reservation of Rights</u>**

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at, prior to, or during the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments or the bidding format for one or more of the bidding rounds, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing or any other hearing.

# Exhibit 2

## Sale Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>UPG ENTERPRISES LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-15734 (DRF)<br><br>Jointly Administered |

**NOTICE OF SALE, BIDDING PROCEDURES, POTENTIAL AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE** that, on September 22 and 23, 2026 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), commencing these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the Debtors filed a motion [D.I. [●]] (the "Bidding Procedures Motion") seeking entry of (a) an order (the "Bidding Procedures Order"), (i) authorizing and approving bidding procedures (the "Bidding Procedures")[2] in connection with one or more sales or dispositions (collectively, the "Sale") of any and all or substantially all of the Debtors' assets (the "Assets"), (ii) establishing certain dates and deadlines for the sale process, including scheduling an auction of the Assets (the "Auction"), if applicable, in accordance with the Bidding Procedures, and the hearing with respect to the approval of the Sale (the "Sale Hearing"), (iii) approving the form and manner of notice of the Auction, if any, the Sale and the Sale Hearing, (iv) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale and approving the form and manner of notice thereof, (v) authorizing the Debtors in their discretion to select one or more Stalking Horse Bidders and enter into one or more Stalking Horse Agreements and, in connection with any Stalking Horse Agreement, provide the Bid Protections to the extent the Debtors determine that provision of such Bid Protections would be an actual and necessary cost of preserving the value of the Debtors' estates, and (vi) granting related relief; and (b) one or more orders (each, a "Sale Order"), as applicable, authorizing and approving: (i) the Sale(s) of

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN are as follows: UPG Enterprises, LLC (4790); UP Investment Holdings LLC (8445); UPI LS LLC (6446); UPI MakUSA LLC (1401); UPG Metal Services LLC (8496); GenX Leasing Partners LLC (4464); UP Central Office LLC (0397); UP Equipment Holdings LLC (0431); Metalex LLC (6707); UPG Fabrication LLC (9021); National Metalwares Holdings LLC (2789); National Metalwares L.P. (9247); Sidecar NM LLC (4555); Chicago Steel Holdings LLC (0967); Douglass Logistics LLC (6025); Lexington Steel LLC (2209); Maksteel USA LLC (6796); Maksteel Transport LLC (9011); and UPG Flat Roll Group LLC (7515). The Debtors' mailing address is 1400 16th St., #250, Oak Brook, IL 60523.

[2] Capitalized terms not defined in this notice are defined in the Bidding Procedures Motion or the Bidding Procedures, as applicable.

Assets to one or more Stalking Horse Bidders, if any, or otherwise Successful Bidder(s), as applicable (the "Purchaser"), free and clear of all liens, claims, interests, and encumbrances to the extent set forth in the applicable Stalking Horse Agreement or purchase and sale agreement(s) with the otherwise Successful Bidder(s), as applicable (the "PSA"), (ii) the assumption and assignment of the Selected Assumed Contracts as set forth in the PSA, and (iii) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the Court entered the Bidding Procedures Order [D.I. [●]], approving, among other things, the Bidding Procedures, which establish key dates and times relating to the Sale and the Auction. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

**Contact Persons for Parties Interested in Submitting a Bid**

The Bidding Procedures set forth in detail the requirements for submitting Qualifying Bids, and any person interested in making an offer to purchase the Assets must comply strictly with the Bidding Procedures. Only Qualifying Bids that are submitted in accordance with the Bidding Procedures will be considered by the Debtors.

**Any persons interested in making an offer to purchase the Assets should contact the Debtors' investment banker as soon as possible: SC&H (Hank Waida (hwaida@schgroup.com)).**

**Important Dates and Deadlines**[4]

- **Bid Deadline.** The deadline to submit a Qualifying Bid is **October 28, 2026, at 4:00 p.m. (CT).**

- **Auction.** If two or more Qualifying Bids for particular Assets are received by the Bid Deadline, the Debtors will conduct the Auction, which shall take place **November 2, 2026, at 9:00 a.m. (CT)** at the offices of Vedder Price, P.C., 222 N. La Salle St., Chicago, Illinois 60601, or on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with the Consultation Parties. If the Debtors do not receive any Qualifying Bids other than a Stalking Horse Bid for particular Assets, the Debtors will not conduct the Auction and will designate the Stalking Horse Bid as the Successful Bid. If the Debtors receive only one timely Qualifying Bid for Assets not subject to a Stalking Horse Bid, the Debtors will not hold an Auction and the Qualifying Bid will be deemed the Successful Bid.

- **Objection Deadlines.** The deadline to file an objection with the Court to the consummation of the Sale (excluding objections relating solely to the conduct of the Auction or identity of the Successful(s) Bidder other than the Stalking Horse Bidder) is

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

[4] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

**October 28, 2026, at 4:00 p.m. (CT)** (the "Sale Objection Deadline"). If the Auction is held, objections relating solely to conduct of the Auction, the identity of the Successful Bidder(s) (other than the Stalking Horse Bidder) or adequate assurance of future performance provided by the Successful Bidder(s) (other than the Stalking Horse Bidder) must be **at the Sale Hearing** (the "Adequate Assurance Objection Deadline"). Any objections not resolved prior to the Sale Hearing shall be argued at the Sale Hearing or such other time as set by the Court.

- **Sale Hearing.** The Sale Hearing to consider the proposed Sale will be held before The Honorable Judge Fine on **November 5, 2026, at 10:00 a.m. (CT)**, or such other date as determined by the Court, at the United States Bankruptcy Court for the Northern District of Illinois, 219 S. Dearborn Street, 6th Floor, Courtroom 619, Chicago, Illinois 60604.

**Filing Objections**

Objections to the Sale or conduct of the Auction, if any, must (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all orders of the Court entered in these chapter 11 cases, (iii) be filed with the Court by the Sale Objection Deadline or Adequate Assurance Objection Deadline, as applicable, and (iv) be served upon the following parties (collectively, the "Objection Notice Parties): (a) proposed counsel to the Debtors: Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Derek C. Abbott (dabbott@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); Tamara K. Mann (tmann@morrisnichols.com); Liam Davis (ldavis@morrisnichols.com); and Cicely Berzack (cberzack@morrisnichols.com); (b) proposed co-counsel to the Debtors: Vedder Price, P.C., 222 N. La Salle St., Chicago, Illinois 60601, Attn: Michael M. Eidelman (meidelman@vedder.com) and William W. Thorsness (wthorsness@vedder.com); (c) counsel to any Official Committee of Unsecured Creditors; (d) the Office of the United States Trustee for Region 11 (the "U.S. Trustee"), 219 South Dearborn, Room 873, Chicago, Illinois 60604, Attn: Adam Brief (adam.brief@usdoj.gov); (e) counsel to the Proposed DIP Lender, DLA Piper LLP (US), 444 West Lake Street, Suite 900, Chicago, IL 60606 (Attn: John Lyons (john.lyons@us.dlapiper.com) and Gregory Juell (gregory.juell@us.dlapiper.com)) (f) counsel to White Oak Commercial Finance, LLC, as prepetition secured agent and lender, Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, IL 60603 (Attn: Dimitri G. Karcazes (Dimitri.Karacazes@goldbergkohn.com) and Eva D. Gadzheva (Eva.Gadzheva@goldbergkohn.com)); (g) counsel to the Wintrust Lenders, Seyfarth Shaw LLP, 233 S. Wacker Drive, Suite 8000, Chicago, IL 60606 (Attn: Nicholas R. Marcus (nmarcus@seyfarth.com) and Gus Paloian (gpaloian@seyfarth.com); and (h) any Stalking Horse Bidders.

**Consequences of Failing to Timely File an Objection**

**ANY PARTY WHO FAILS TO MAKE A TIMELY SALE OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE OR, SOLELY WITH RESPECT TO OBJECTIONS RELATED TO THE IDENTITY OF THE SUCCESSFUL BIDDER(S) (OTHER THAN THE STALKING HORSE BIDDER) OR ADEQUATE ASSURANCE OF FUTURE PERFORMANCE PROVIDED BY THE SUCCESSFUL BIDDER(S),**

**ADEQUATE ASSURANCE OBJECTION DEADLINE, AS APPLICABLE, IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS.**

**Sale Free and Clear**

**The Sale will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale. Accordingly, as a result of the Sale, the Purchaser will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Purchaser will have no liability, except as expressly provided in the Purchaser's Purchase and Sale Agreement, for any liens, claims, encumbrances and other interests against or in any of the Debtors under any theory of law, including successor liability theories.**

**Obtaining Additional Information**

Copies of the Bidding Procedures Motion, the Bidding Procedures, the Bidding Procedures Order, any Stalking Horse Agreement(s), and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at https://dm.epiq11.com/UPG, or can be requested by calling the Debtors' claims and noticing agent, Epiq, (877) 359-5876 (Domestic) or +1 (971) 257-1424 (International).

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

*[Remainder of Page Intentionally Left Blank]*

Dated: September 28, 2026

**VEDDER PRICE, P.C.**

*/s/ Michael M. Eidelman*

Michael M. Eidelman (No. 6197788)
William W. Thorsness (No. 6290913)
Brooke H. Blackwell (No. 6329454)
222 N La Salle St., Suite 2600
Chicago, Illinois 60601
Telephone: (312) 609-7500
Facsimile: (312) 609-5005
Email: meidelman@vedder.com
wthorsness@vedder.com
bblackwell@vedder.com

*-and-*

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

Derek C. Abbott (No. 3376)
Matthew O. Talmo (No. 6333)
Tamara K. Mann (No. 5643)
Liam Davis (No. 7563)
Cicely Berzack (No. 7547)
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbott@morrisnichols.com
mtalmo@morrisnichols.com
tmann@morrisnichols.com
ldavis@morrisnichols.com
cberzack@morrisnichols.com

*Proposed Counsel to the Debtors and Debtors in Possession*

# Exhibit 3

## Contract Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| UPG ENTERPRISES LLC, *et al.*, | Case No. 26-15734 (DRF) |
| Debtors.[1] | Jointly Administered |

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**PLEASE TAKE NOTICE** that, on September 22 and 23, 2026 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), commencing these chapter 11 cases (the "Chapter 11 Cases").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the Debtors filed a motion [D.I. [●]] (the "Bidding Procedures Motion") seeking entry of (a) an order (the "Bidding Procedures Order"), (i) authorizing and approving bidding procedures (the "Bidding Procedures")[2] in connection with one or more sales or dispositions (collectively, the "Sale") of any and all or substantially all of the Debtors' assets (the "Assets"), (ii) establishing certain dates and deadlines for the sale process, including scheduling an auction of the Assets (the "Auction"), if applicable, in accordance with the Bidding Procedures, and the hearing with respect to the approval of the Sale (the "Sale Hearing"), (iii) approving the form and manner of notice of the Auction, if any, the Sale and the Sale Hearing, (iv) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale and approving the form and manner of notice thereof, (v) authorizing the Debtors in their discretion to select one or more Stalking Horse Bidders and enter into a Stalking Horse Agreement and, in connection with any Stalking Horse Agreement, provide the Bid Protections to the extent the Debtors determine that provision of such Bid Protections would be an actual and necessary cost of preserving the value of the Debtors' estates, and (vi) granting related relief; and (b) one or more

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN are as follows: UPG Enterprises, LLC (4790); UP Investment Holdings LLC (8445); UPI LS LLC (6446); UPI MakUSA LLC (1401); UPG Metal Services LLC (8496); GenX Leasing Partners LLC (4464); UP Central Office LLC (0397); UP Equipment Holdings LLC (0431); Metalex LLC (6707); UPG Fabrication LLC (9021); National Metalwares Holdings LLC (2789); National Metalwares L.P. (9247); Sidecar NM LLC (4555); Chicago Steel Holdings LLC (0967); Douglass Logistics LLC (6025); Lexington Steel LLC (2209); Maksteel USA LLC (6796); Maksteel Transport LLC (9011); and UPG Flat Roll Group LLC (7515). The Debtors' mailing address is 1400 16th St., #250, Oak Brook, IL 60523.

[2] Capitalized terms not defined in this notice are defined in the Bidding Procedures Motion or the Bidding Procedures, as applicable.

orders (each, a "Sale Order"), as applicable, authorizing and approving: (i) the Sale of the Assets to the Stalking Horse Bidder, if any, or otherwise Successful Bidder(s), as applicable (the "Purchaser"), free and clear of all liens, claims, interests, and encumbrances to the extent set forth in the Stalking Horse Agreement or purchase and agreement(s) with the otherwise Successful Bidder(s), as applicable (the "PSA"), (ii) the assumption and assignment of the Selected Assumed Contracts as set forth in the PSA, and (iii) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the Court entered the Bidding Procedures Order [D.I. [●]], approving, among other things, the Bidding Procedures, which establish key dates and times relating to the Sale and the Auction. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.

**PLEASE TAKE FURTHER NOTICE** that, upon the closing of the Sale, the Debtors intend to assume and assign to the Purchaser certain executory contracts and unexpired leases (the "Assumed Contracts"). A schedule listing the contracts and leases that ***may potentially*** be assumed and assigned as part of the Sale is attached hereto as **Exhibit 1** (the "Contracts Schedule") and may also be viewed free of charge on the Debtors' case information website, located at https://dm.epiq11.com/UPG, or can be requested by calling the Debtors' claims and noticing agent, Epiq, (877) 359-5876 (Domestic) or +1 (971) 257-1424 (International).

**PLEASE TAKE FURTHER NOTICE** that Cure Amounts, if any, for the assumption and assignment of such contracts and leases are also set forth on the Contracts Schedule. Each Cure Amount listed on the Contracts Schedule represents all liabilities of any nature of the Debtors arising under a contract or lease prior to the closing of the Sale or other applicable effective date of the assumption and assignment of such contract or lease, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale or other applicable effective date of the assumption and assignment of such contract or lease.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A CONTRACT OR LEASE THAT MAY BE ASSUMED AND ASSIGNED AS PART OF THE SALE**. ***The presence of a contract or lease listed on Exhibit 1 attached hereto does not constitute an admission that such contract or lease is an executory contract or unexpired lease or that such contract or lease will be assumed and assigned as part of the Sale. The Debtors reserve all their rights, claims and causes of action with respect to the contracts and leases listed on Exhibit 1 attached hereto.***

## Filing Objections

Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of a contract or lease on any basis (other than objections related solely to adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder, if any), including any objection relating to Cure Amounts or adequate assurance of the Stalking Horse Bidder's, if any, future ability to perform, must (1)(a) be in writing; (b) state the basis for such objection; and (c) if such objection is to the Cure Amount, state with specificity what Cure Amount the counterparty believes is required (in all cases, with appropriate

documentation in support thereof) and (2) be filed with the Court and served no later than **October 28, 2026 at 4:00 p.m. (CT)** on the following parties (collectively, the "Objection Notice Parties"): (a) proposed counsel to the Debtors: Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Derek C. Abbott (dabbott@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); Tamara K. Mann (tmann@morrisnichols.com); Liam Davis (ldavis@morrisnichols.com); and Cicely Berzack (cberzack@morrisnichols.com); (b) proposed co-counsel to the Debtors, Vedder Price, P.C., 222 N. La Salle St., Chicago, Illinois 60601, Attn: Michael M. Eidelman (meidelman@vedder.com) and William W. Thorsness (wthorsness@vedder.com); (c) counsel to any Official Committee of Unsecured Creditors; (d) the Office of the United States Trustee for Region 11 (the "U.S. Trustee"), 219 South Dearborn, Room 873, Chicago, Illinois 60604, Attn: Adam Brief (adam.brief@usdoj.gov); (e) counsel to the Proposed DIP Lender, DLA Piper LLP (US), 444 West Lake Street, Suite 900, Chicago, IL 60606 (Attn: John Lyons (john.lyons@us.dlapiper.com) and Gregory Juell (gregory.juell@us.dlapiper.com)); (f) counsel to White Oak Commercial Finance, LLC, as prepetition secured agent and lender, Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, IL 60603 (Attn: Dimitri G. Karcazes (Dimitri.Karacazes@goldbergkohn.com) and Eva D. Gadzheva (Eva.Gadzheva@goldbergkohn.com)); (g) counsel to the Wintrust Lenders, Seyfarth Shaw LLP, 233 S. Wacker Drive, Suite 8000, Chicago, IL 60606 (Attn: Nicholas R. Marcus (nmarcus@seyfarth.com) and Gus Paloian (gpaloian@seyfarth.com); and (h) any Stalking Horse Bidders.

The Debtors shall file a notice identifying the Successful Bidder(s) and Backup Bidder(s) (if selected) (the "Notice of Successful Bidder") and shall serve the Notice of Successful Bidder on each counterparty to a potential Assigned Contract as soon as reasonably practicable after closing the Auction, if any. Each counterparty to a potential Assigned Contract will then have an opportunity to object to the identity of the Successful Bidder(s) (other than the Stalking Horse Bidder, if any) or adequate assurance of future performance with respect to such counterparty's contract or lease provided by the Successful Bidder(s), which must (i) be in writing, (ii) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (iii) state, with specificity, the legal and factual bases thereof, (iv) be **at the Sale Hearing** (the "Adequate Assurance Objection Deadline"), and (v) be served on the Objection Notice Parties.

The Court will hear and determine any objections to the assumption and assignment of the Assumed Contracts to the Purchaser at the Sale Hearing or at a later hearing, as determined by the Debtors. The Sale Hearing to consider the proposed Sale shall be held before The Honorable Judge Fine on **November 5, 2026, at 10:00 a.m. (CT)**, or such other date as determined by the Court, at the United States Bankruptcy Court for the Northern District of Illinois, 219 S. Dearborn Street, 6th Floor, Courtroom 619, Chicago, Illinois 60604.

**Consequences of Failing to Timely Assert an Objection**

**UNLESS YOU FILE AN OBJECTION TO THE CURE AMOUNT AND/OR THE ASSUMPTION OR ASSIGNMENT OF YOUR CONTRACT OR LEASE IN ACCORDANCE WITH THE INSTRUCTIONS AND DEADLINES SET FORTH HEREIN, YOU SHALL BE (A) BARRED FROM OBJECTING TO THE CURE AMOUNT SET FORTH ON EXHIBIT 1, (B) ESTOPPED FROM ASSERTING OR CLAIMING ANY**

**CURE AMOUNT AGAINST THE DEBTORS, THE STALKING HORSE BIDDER, IF ANY, OR OTHERWISE SUCCESSFUL BIDDER(S) THAT IS GREATER THAN THE CURE AMOUNT SET FORTH ON <u>EXHIBIT 1</u> AND (C) DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND/OR ASSIGNMENT OF YOUR CONTRACT OR LEASE AND THE ADEQUACY OF ASSURANCE OF FUTURE PERFORMANCE THEREUNDER.**

**<u>Obtaining Additional Information</u>**

Copies of the Bidding Procedures Motion, the Bidding Procedures, the Bidding Procedures Order, the Stalking Horse Agreement, if any, and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at https://dm.epiq11.com/UPG, or can be requested by calling the Debtors' claims and noticing agent, Epiq, (877) 359-5876 (Domestic) or +1 (971) 257-1424 (International).

Adequate assurance of future performance information for the Stalking Horse Bidder, if any, will be available by contacting counsel to the Stalking Horse Bidder.

*[Remainder of Page Left Intentionally Blank]*

Dated: September 28, 2026

**VEDDER PRICE, P.C.**

*/s/ Michael M. Eidelman*
Michael M. Eidelman (No. 6197788)
William W. Thorsness (No. 6290913)
Brooke H. Blackwell (No. 6329454)
222 N La Salle St., Suite 2600
Chicago, Illinois 60601
Telephone: (312) 609-7500
Facsimile: (312) 609-5005
Email: meidelman@vedder.com
wthorsness@vedder.com
bblackwell@vedder.com

*-and-*

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

Derek C. Abbott (No. 3376)
Matthew O. Talmo (No. 6333)
Tamara K. Mann (No. 5643)
Liam Davis (No. 7563)
Cicely Berzack (No. 7547)
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbott@morrisnichols.com
mtalmo@morrisnichols.com
tmann@morrisnichols.com
ldavis@morrisnichols.com
cberzack@morrisnichols.com

*Proposed Counsel to the Debtors and Debtors in Possession*