**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| UPG ENTERPRISES, LLC, *et al.*, | Case No. 26-15734 |
| Debtors.[1] | Hon. Daniel R. Fine |
| | (Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF ARG ENTITIES TO DEBTORS' MOTION FOR ENTRY OF ORDERS (A) (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES FOR THE SALE OF ANY AND ALL OR SUBSTANTIALLY ALL THE DEBTORS' ASSETS, (II) SCHEDULING AN AUCTION AND A SALE HEARING, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES, AND (V) GRANTING RELATED RELIEF**

ARG UPDBNMI001, LLC ("ARG Dearborn"); ARG LSWYGMI001, LLC ("ARG Wyoming"); and ARG UPARAIL001, LLC ("ARG Aurora," and with ARG Dearborn and ARG Wyoming, the "ARG Entities"), by and through their undersigned counsel, hereby submit this limited objection and reservation of rights (the "Objection") to the *Debtors' Motion for Entry of Orders (A) (I) Authorizing and Approving Bidding Procedures for the Sale of Any and All or Substantially All the Debtors' Assets, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for*

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN are as follows: UPG Enterprises, LLC (4790); UP Investment Holdings LLC (8445); UPI LS LLC (6446); UPI MakUSA LLC (1401); UPG Metal Services LLC (8496); GenX Leasing Partners LLC (4464); UP Central Office LLC (0397); UP Equipment Holdings LLC (0431); Metalex LLC (6707); UPG Fabrication LLC (9021); National Metalwares Holdings LLC (2789); National Metalwares L.P. (9247); Sidecar NM LLC (4555); Chicago Steel Holdings LLC (0967); Douglass Logistics LLC (6025); Lexington Steel LLC (2209); Maksteel USA LLC (6796); Maksteel Transport LLC (9011); UPG Flat Roll Group LLC (7515); and Lamination Specialties LLC (5604). The Debtors' mailing address is 1400 16th St., #250, Oak Brook, IL 60523.

*the Assumption and Assignment of Certain Executory Contracts and Leases, and (V) Granting Related Relief; (B)(I) Approving the Sale of Any and All or Substantially All the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 49] (the "Motion")[2]. In support of this Objection, the ARG Entities respectfully state as follows:

## PRELIMINARY STATEMENT

1. The ARG Entities, as landlords to certain of the Debtors, do not oppose a value-maximizing sale process. The ARG Entities object only to the extent that the proposed Bidding Procedures Order (the "Proposed Order"), the Bidding Procedures, the Sale Notice, and the Contract Notice (each as defined in, and attached to, the Motion) would deprive the ARG Entities of the protections that section 365 of the Bankruptcy Code guarantees to a nonresidential real property lessor whose lease is assumed and assigned.

2. As proposed, the procedures (a) rest on a compressed sale timeline that is not designed to maximize value for the estates and denies counterparties a meaningful opportunity to be heard, (b) shift to landlords the Debtors' burden of ensuring adequate assurance of future performance, (c) fail to require that adequate assurance information be served on landlords at all, (d) set a Contract Objection Deadline that may expire before landlords actually receive the Contract Notice, (e) treat the scheduled Cure Amount as a release of all obligations under the lease, including continuing obligations the assignee must perform going forward, (f) permit the Debtors unilaterally to extend deadlines and waive Bid Requirements in ways that may prejudice landlords, and (g) seek an overbroad finding that "all anti-assignment provisions" of the Assumed Contracts

[2] Any capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion.

are unenforceable. Many of these issues can be resolved through modest modifications to the Proposed Order, as described below.

## BACKGROUND

3. ARG Dearborn is the owner of real property located at 4343 Wyoming Avenue, Dearborn, Michigan, and leased that property, under a triple net lease dated January 1, 2019 (the "Dearborn Lease"), to Debtor GenX Leasing Partners LLC ("GenX"), as tenant.

4. ARG Aurora is the owner of real property located at 900 North Russell Avenue, Aurora, Illinois, and leased that property, under a triple net lease dated April 1, 2019 (the "Aurora Lease"), to Debtor GenX, as tenant.

5. ARG Wyoming is the owner of real property located at 5875 Weller Court SW, Wyoming, Michigan, and leased that property, under a triple net lease dated September 14, 2015 (the "Wyoming Lease," and with the Dearborn Lease and Aurora Lease, the "Leases"), originally to Lee Steel Holdings LLC ("Lee Steel"), as tenant. Lee Steel merged into Debtor Maksteel USA LLC ("Maksteel") in February 2019 and succeeded to the tenant's interest.

6. Each of the Leases is a triple net lease. Among other things, GenX and Maksteel are required to pay, in addition to base rent, all real estate taxes, insurance premiums, and operating expenses for the relevant premises, to maintain and repair the premises, to comply with applicable laws (including environmental laws), and to indemnify the applicable ARG Entity. Certain of these charges are estimated and paid periodically and are subject to annual reconciliation, and certain of them accrue over time but are not billed until after the period to which they relate.

7. On September 22 and 23, 2026, the Debtors commenced these chapter 11 cases. On September 25, 2026, the Debtors filed the Motion. The hearing on the Proposed Order is scheduled for October 14, 2026. The Proposed Order would establish the following schedule,

among other dates: (a) service of the Sale Notice and Contract Notice within five business days of entry of the Proposed Order (*i.e.*, by approximately October 21, 2026); (b) filing of any Notice of Stalking Horse Bidder by October 21, 2026; (c) a Sale Objection Deadline, Contract Objection Deadline, and Bid Deadline of October 28, 2026, at 4:00 p.m. (CT); (d) designation of Qualifying Bids by October 30, 2026; (e) an Auction on November 2, 2026; (f) an Adequate Assurance Objection Deadline for a Successful Bidder other than a Stalking Horse Bidder "at the Sale Hearing"; (g) a Sale Hearing on November 5, 2026; and (h) a Sale closing no later than November 19, 2026. *See* Proposed Order at ¶ 3 [Docket No. 49 at 49-50 of 87].

## OBJECTION

### I. The Proposed Sale Timeline Is Unreasonably Compressed.

8. The Debtors propose to move from petition to Sale Hearing in roughly six weeks. The Bid Deadline would fall fourteen days after the hearing on the Proposed Order, the Auction five days later, and the Sale Hearing three days after that. *See* Proposed Order at ¶ 3 [Docket No. 49 at 49-50 of 87]. The schedule should be adjusted to permit 14-day objection periods. *See* Local Rule 9090-3.

9. The proposed schedule leaves counterparties with little practical opportunity to review cure schedules, evaluate proposed assignees, negotiate consensual resolutions, and prepare evidence-supported objections. The Motion does not show that a sale process of this speed is necessary to preserve value or that a modest extension would harm the estates. To the extent the timeline is driven by milestones under the Debtors' postpetition financing, those milestones should not come at the expense of the statutory rights of counterparties under section 365 of the Bankruptcy Code.

10. Nor is the proposed timeline calculated to maximize value for the estates. The goal of a section 363 sale is the highest or otherwise best offer, and bidding procedures are approved to the extent they promote competitive bidding. *See, e.g.*, *In re Stingfree Techs., Inc.*, No. 08-16232bf, 2009 Bankr. LEXIS 3023, at *37 (Bankr. E.D. Pa. Feb. 4, 2009) ("In general, bidding procedures 'are designed to: (i) maximize the purchase price of the assets sold; (ii) level the playing field for other potential bidders; (iii) provide protections to a stalking horse; and (iv) provide order to the process.'") (citation omitted).

11. Here, bidders would have fourteen days after the hearing on the Proposed Order to complete diligence, arrange financing, and submit a binding Qualifying Bid, and only seven days to evaluate any stalking horse agreement filed on October 21st. *See* Proposed Order at ¶ 3 [Docket No. 49 at 49-50 of 87]. That window is particularly inadequate for the Debtors' steel processing and fabrication assets. Such a process favors parties already familiar with the Debtors' assets, including any Stalking Horse Bidder or the Debtors' lenders, and deters new bidders.

12. The Debtors' prepetition marketing does not justify this schedule. Their investment banker was appointed "[i]mmediately preceding the Petition Date," and the process produced only non-binding letters of interest. *See* Motion at ¶¶ 9–11 [Docket No. 49 at 8–9 of 87]. No Stalking Horse Bid is yet in an executed agreement, and those bids cover only discrete asset pools. *Id.* at ¶¶ 13–14 [Docket No. 49 at 9–10 of 87]. The Debtors concede that a postpetition process is needed to "solicit higher and better offers than the Stalking Horse Bids." *Id.* at ¶ 14 [Docket No. 49 at 10 of 87]. That process cannot be so truncated that new bidders cannot realistically participate.

13. The Court should require the Debtors to extend the Bid Deadline, Auction, Sale Hearing, and related objection deadlines sufficiently to permit meaningful bidder participation and counterparty review, and should key all counterparty deadlines to actual service of the relevant

notice or information. Each of the defects below is exacerbated by the compressed timeline and independently warrants modification of the Proposed Order.

## II. The Debtors Have the Burden of Demonstrating Adequate Assurance of Future Performance.

14. The Contract Notice provides that "[a]dequate assurance of future performance information for the Stalking Horse Bidder, if any, will be available by contacting counsel to the Stalking Horse Bidder." *See* Contract Notice at 5 [Docket No. 49 at 86 of 87]. Objections to the adequate assurance of a Stalking Horse Bidder must be filed by the Contract Objection Deadline. *See* Proposed Order at ¶ 20(c) [Docket No. 49 at 57 of 87].

15. This procedure inverts the statutory burden. A debtor may assume a lease in default only if it "provides adequate assurance of future performance," and may assign a lease only if "adequate assurance of future performance by the assignee . . . is provided." 11 U.S.C. §§ 365(b)(1)(C), (f)(2)(B). The burden does not rest with the contract counterparty to seek adequate assurance of future performance. *See Ill. Inv. Trust No. 92-7163 v. Allied Waste Indus. (In re Res. Tech. Corp.)*, 624 F.3d 376, 384 (7th Cir. 2010) (holding that the assignee bears the burden of proving it meets the requirements of section 365(f)). As the Debtors acknowledge, in the leasing context "the chief determinant of adequate assurance is whether rent will be paid." Motion at ¶ 55 [Docket No. 49 at 41 of 87] (citing *In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986)). The ARG Entities cannot evaluate that question without the required information.

16. The Proposed Order should require the Debtors to serve each affected counterparty, by email (where available) and overnight mail, with each Stalking Horse Bidder's adequate assurance information when the Notice of Stalking Horse Bidder is filed, with the objection deadline running from that service. That information should include, at a minimum: (a) the legal name of the proposed assignee and any guarantor; (b) current financial statements (audited, if

available) of each; (c) the intended use of the premises and relevant operating experience; and (d) a contact person. Bidders must already submit this information "in a form that allows the Debtors to serve" it. Bidding Procedures at § 5(j) [Docket No. 49 at 67 of 87]. The Debtors should simply be required to do so.

**III. Adequate Assurance Packages Must Be Served When Qualifying Bids Are Designated.**

17. The same defects relating to adequate assurance packages affects other bidders. Adequate assurance information submitted with Qualifying Bids need only be provided to the secured Consultation Parties, not to the counterparties whose leases would be assigned. *Id*. And because the Notice of Successful Bidder need only be served "as soon as reasonably practicable" after the November 2nd Auction, with objections due "at the Sale Hearing" on November 5th, a landlord may learn the identity of its proposed tenant a day or two before it must contest that party's wherewithal. Proposed Order at ¶ 20(c), (e) [Docket No. 49 at 57–58 of 87].

18. The Proposed Order should require the Debtors, within one business day after designating Qualifying Bids on October 30th, to serve each affected counterparty, by email and overnight mail, with the identity of each Qualifying Bidder and its adequate assurance information, subject to reasonable confidentiality protections. Objections as to any Qualifying Bidder selected as a Successful Bidder or Backup Bidder should be heard at the Sale Hearing, to the extent unresolved and still relevant after the Auction, without prejudice to a later hearing. The same protections should apply before any lease is assigned to a Backup Bidder, which the Debtors otherwise could close "without the need for further notice." *See* Bidding Procedures at § 13 [Docket No. 49 at 74 of 87].

## IV. The Contract Objection Deadline Does Not Afford Counterparties Adequate Time.

19. The Proposed Order requires the Debtors to file and serve the Contract Notice within five business days of entry of the Proposed Order. *See* Proposed Order at ¶ 20(a) [Docket No. 49 at 57 of 87]. Even if the order is entered on October 14th, filing and service could occur on October 21st, only seven days, including a weekend, before the Contract Objection Deadline on October 28th. *Id.* at ¶ 20(c) [Docket No. 49 at 57 of 87]. Any delay in entry shortens that period further. This timing is insufficient. The Contract Objection Deadline should be subject to a 14-day objection period. *See* Local Rule 9090-3.

## V. The Cure Procedures Must Preserve the Assignee's Continuing Obligations Under the Leases.

20. The cure procedures treat the Cure Amount as though it extinguishes every obligation arising under the lease before the Sale closes. The Contract Notice provides that each Cure Amount "represents all liabilities of any nature of the Debtors arising under a contract or lease prior to the closing of the Sale . . . whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise." Contract Notice at 3 [Docket No. 49 at 84 of 87]. Absent objection, defaults are "deemed cured," and the counterparty is "forever barred" from asserting pre-Sale Order claims against the Debtors or the Successful Bidder. Proposed Order at ¶ 20(g) [Docket No. 49 at 58 of 87]. The Sale Notice likewise provides that the Sale is free and clear of pre-closing claims, "whether known or unknown." Sale Notice at 4 [Docket No. 49 at 80 of 87].

21. This language cannot be reconciled with section 365. A lease is assumed *cum onere*, with its benefits and its burdens. *See United Air Lines, Inc. v. U.S. Bank Trust Nat'l Ass'n (In re UAL Corp.)*, 346 B.R. 456, 467 (Bankr. N.D. Ill. 2006) ("[I]n order to assume or reject an unexpired lease or executory contract, the trustee must deal with the agreement as a whole – *cum*

*onere* – rather than assuming only the beneficial aspects and rejecting the burdensome ones.") (citation omitted). An assignee that takes the benefit of any of the Leases must take that Lease subject to all of its terms, and section 365(b)(1) requires cure of all defaults and compensation for all actual pecuniary losses, not merely those that happen to have been billed as of the date of the Contract Notice.

22. These concerns are acute under a triple net lease. Pre-closing taxes, insurance, and operating expenses are often not billed or reconciled until well after closing. The tenant's maintenance, repair, environmental, remediation, restoration, and indemnity obligations may arise from pre-closing conditions that will not be known or liquidated by the Contract Objection Deadline, a particular concern given the Debtors' steel processing and fabrication operations. The ARG Entities cannot be required to quantify these obligations by October 28th or forfeit them, and the assignee should not take the premises free of obligations that run with the applicable Lease.

23. Accordingly, the ARG Entities request that the Proposed Order (and any Sale Order) include the following language:

> "Notwithstanding anything to the contrary in this Order, the Bidding Procedures, the Sale Notice, the Contract Notice, any Stalking Horse Agreement, any PSA, or any Sale Order, any assignee of an unexpired lease of nonresidential real property (each, an 'Assigned Lease') shall take such Assigned Lease subject to all of its terms and shall be responsible for all obligations thereunder, including, without limitation, (a) all amounts that have accrued but have not yet been billed or become due as of the effective date of the assignment, including year-end or other periodic adjustments and reconciliations of real estate taxes, insurance, common area maintenance, and other operating expenses, regardless of whether such amounts relate to periods before or after the effective date of the assignment; (b) all maintenance, repair, and restoration obligations; (c) all obligations to indemnify the landlord with respect to third-party claims, whether asserted before or after the effective date of the assignment; and (d) all obligations arising under environmental laws or the environmental provisions of the Assigned Lease. Nothing in this Order shall (i) release, discharge, or impair

> any such obligation of the assignee, or (ii) impair any landlord's rights of setoff or recoupment. The Cure Amount for an Assigned Lease shall not be deemed to release, and the sale of the Assets free and clear of liens, claims, interests, and encumbrances shall not apply to, any obligation under an Assigned Lease described in this paragraph."

24. The ARG Entities further request that the Debtors remain responsible for timely performance of all obligations under the Leases through the effective date of any assumption and assignment or rejection, as required by section 365(d)(3) of the Bankruptcy Code.

**VI. The Debtors Should Not Be Permitted to Modify the Procedures to the Prejudice of Counterparties.**

25. The Bidding Procedures reserve to the Debtors, after consultation only with the Consultation Parties, the right to "extend the deadlines set forth herein, . . . waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions, . . . adjourn or cancel the Auction . . . and adjourn the Sale Hearing." Bidding Procedures at § 16 [Docket No. 49 at 75 of 87]; *see also* Proposed Order at ¶¶ 3, 8, 24 [Docket No. 49 at 49–50, 52, 59–60 of 87]. Landlords like the ARG Entities are not Consultation Parties. *See* Bidding Procedures at § 15(b) [Docket No. 49 at 74 of 87].

26. Under this provision, the Debtors could, without notice to landlords or Court approval, waive the requirement that a bidder submit adequate assurance information or compress the time available to evaluate a proposed assignee. Absent Court order or the affected counterparty's written consent, the Debtors should not be permitted to (a) waive or modify any Bid Requirement relating to adequate assurance of future performance or the identification of contracts and leases to be assumed and assigned, (b) shorten any counterparty deadline or notice period, or (c) otherwise modify the procedures in a manner adverse to counterparties. Any

extension should be filed and served on affected counterparties, with related counterparty deadlines extended correspondingly.

### VII. The Requested Finding Regarding Anti-Assignment Provisions Is Overbroad and Premature.

27. The Motion asks the Court to "find that all anti-assignment provisions of such contracts are unenforceable under section 365(f) of the Bankruptcy Code." Motion at ¶ 57 [Docket No. 49 at 42 of 87]. That request is broader than the statute, which reaches only provisions that "prohibit[], restrict[], or condition[] the assignment" of a lease or that terminate or modify it "because of the assumption or assignment." 11 U.S.C. § 365(f)(1), (3). The requested finding is also premature, because the Debtors have not identified which leases will be assigned, to whom, or which provisions they contend are unenforceable. Any such finding should be made, if at all, in the Sale Order on a lease-by-lease basis, and limited as follows:

> "Any provision in an Assigned Lease that prohibits, restricts, or conditions the assignment of such Assigned Lease shall be unenforceable solely to the extent provided in, and solely with respect to the assignment approved by this Order pursuant to, section 365(f) of the Bankruptcy Code. Nothing in this Order shall render unenforceable or otherwise modify any other provision of an Assigned Lease."

## RESERVATION OF RIGHTS

28. The ARG Entities reserve all rights to object, on any grounds, to any proposed assumption and assignment of any of the Leases, Cure Amount, adequate assurance offered by any bidder, proposed Sale Order, or other relief sought by the Debtors. The ARG Entities further reserve the right to supplement or amend this Objection, to assert all amounts due under the Leases, including attorneys' fees and costs as provided therein, and to join in the objections of other parties. Nothing herein waives any of the ARG Entities' rights or remedies.

**CONCLUSION**

WHEREFORE, the ARG Entities respectfully request that the Court (i) condition approval of the Motion and entry of the Proposed Order on the modifications described in this Objection, and (ii) grant the ARG Entities such other and further relief as is just and proper.

Dated: New York, New York
October 7, 2026

LOEB & LOEB LLP

/s/ *Bethany D. Simmons*

Bethany D. Simmons
Noah Weingarten
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Email: bsimmons@loeb.com
nweingarten@loeb.com

*Attorneys for Creditors*
*ARG UPDBNMI001, LLC;*
*ARG LSWYGMI001, LLC; and*
*ARG UPARAIL001, LLC*

**CERTIFICATE OF SERVICE**

I, Bethany D. Simmons, an attorney, certify that I served a copy of this *Limited Objection and Reservation of Rights of ARG Entities to Debtors' Motion for Entry of Orders (A) (I) Authorizing and Approving Bidding Procedures for the Sale of Any and All or Substantially All the Debtors' Assets, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of the Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Leases, and (V) Granting Related Relief*, on each entity shown on the attached list at the address shown and by the method shown on October 7, 2026.

BY: /s/ *Bethany D. Simmons*

Bethany D. Simmons
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Email: bsimmons@loeb.com

**SERVICE LIST**

**REGISTRANTS SERVED THROUGH THE COURT'S ELECTRONIC NOTICE**

Derek C. Abbott, Esq., Matthew O. Talmo, Esq., Tamara K. Mann, Esq., Liam Davis, Esq., and Cicely Berzack, Esq., Morris, Nichols, Arsht & Tunnell LLP, on behalf of the Debtors (proposed counsel)
dabbott@morrisnichols.com mtalmo@morrisnichols.com tmann@morrisnichols.com
ldavis@morrisnichols.com cberzack@morrisnichols.com

Michael M. Eidelman and William W. Thorsness, Brooke H. Blackwell, Vedder Price, P.C., on behalf of the Debtors (proposed co-counsel)
ecfdocket@vedder.com meidelman@vedder.com michael-eidelman-9405@ecf.pacerpro.com
wthorsness@vedder.com william-thorsness6297@ecf.pacerpro.com bblackwell@vedder.com

Adam Brief on behalf of the Office of the United States Trustee for the Northern District of Illinois (Region 11)
adam.brief@usdoj.gov

John Lyons and Gregory Juell, DLA Piper LLP (US), on behalf of the Proposed DIP Lender
john.lyons@us.dlapiper.com gregory.juell@us.dlapiper.com renu.shah@skadden.com
chdocket@skadden.com

Dimitri G. Karcazes and Eva D. Gadzheva, Goldberg Kohn Ltd., on behalf of the White Oak Commercial Finance, LLC Lenders
Dimitri.Karcazes@goldbergkohn.com Eva.Gadzheva@goldbergkohn.com

Nicholas R. Marcus and Gus Paloian, Seyfarth Shaw LLP, on behalf of Creditor Schaumburg Bank & Trust Company, N.A., the Wintrust Lenders
nmarcus@seyfarth.com gpaloian@seyfarth.com

Ricardo Alvarez on behalf of Creditor Central States Joint Board Health and Welfare Trust Fund
alvarez@johnsonkrol.com

Brian T Bedinghaus on behalf of Creditor AIM Leasing Company dba AIM NationaLease
bbedinghaus@ralaw.com casedocket@ralaw.com gharris@ralaw.com

Brendan G Best on behalf of Creditor Mill Steel Company
bgbest@varnumlaw.com tachristians@varnumlaw.com

Carrie A. Dolan on behalf of Creditor Providence Bank & Trust
cdolan@cohonraizes.com

Timothy M Hughes on behalf of Creditor Labor Solutions, LLC
thughes@lavellelaw.com r41234@notify.bestcase.com

Jeffrey A Krol on behalf of Creditor Central States Joint Board Health and Welfare Trust Fund
krol@johnsonkrol.com docket@johnsonkrol.com burca@johnsonkrol.com

Bethany Simmons and Noah Weingarten on behalf of Creditor ARG LSWYGMI001, LLC
bsimmons@loeb.com nydocket@loeb.com nweingarten@loeb.com

Stuart Freeman Wilson-Patton on behalf of Creditor TN Dept of Labor –
Bureau of Unemployment Insurance
stuart.wilson-patton@ag.tn.gov